LEO BUGG, JR. *v.* THE GUILFORD-CHESTER WATER COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and BORDON, JS.

Argued February 2—decided March 31, 1954

*William L. Beers,* with whom were *John B. Kidney* and, on the brief, *George G. Whitehead,* for the appellant (plaintiff).

*Donald E. Cobey,* with whom was *Samuel A. Persky,* for the appellee (defendant).

BALDWIN, J. The plaintiff, as assignee, sued the defendant upon two contracts which the defendant had made with The Clinton Land Company, Inc. The Superior Court rendered judgment for the defendant and the plaintiff has appealed.

The finding of the trial court may be abbreviated as follows: The Clinton Land Company, Inc., hereinafter referred to as the land company, developed a tract of land which it owned in Clinton for the sale of building lots. To provide water service for the lots, it entered into a written contract with the defendant on May 14, 1926, by which the defendant was to lay water mains in the streets of the development for $3800. The defendant agreed that, when its return from rates charged to the lot owners for water service reached $304 a year, it would purchase the mains from the land company for $3800. This contract was amended by a supplemental agreement dated August 1, 1928, which provided that the land company would sell the mains, and the defendant

would purchase them, for $9945.43 when the income from water rates paid by lot owners equaled or exceeded $795 in one year. On August 12, 1927, the land company mortgaged its development to the Clinton National Bank, hereinafter referred to as the bank, to secure an indebtedness of $10,500. The defendant laid the water mains at a cost to it of $9945.43 and was paid that amount by the land company. On March 17, 1933, the land company assigned all its interest in the two contracts to the bank. The assignment provided "that said Contract shall not be reconveyed to any person not the holder of the mortgage now held by the Clinton National Bank on real estate of the Clinton Land Co." The bank acquired an absolute title to the real estate development, but not to the contracts, by strict foreclosure on May 7, 1936.

On September 30, 1937, the bank conveyed the real estate, with the exception of 122 lots which had been sold and released from the lien of the mortgage, by quitclaim deed to S. Burdette Reed, John L. Eliot, Robert B. Lively, George S. Hull, Milo D. Booth, Charles A. Pelton, Herbert M. Baldwin and Charles A. Post. In April, 1947, the income to the defendant from water rates paid by lot owners equaled or exceeded $795 per year. On July 24, 1947, the bank assigned the two contracts to five of the grantees in the quitclaim deed of September 30, 1937, and to the representatives of the estates, or other successors in interest, of the remaining three. On the same day these assignees, except the administrators of the estate of John L. Eliot, who acted on August 6, 1947, quitclaimed the land and assigned their interest in the contracts to the plaintiff. None of the changes in the finding sought by the plaintiff would affect the disposition we make of this appeal.

The plaintiff attacks the trial court's conclusion that the purported assignment of the contracts by the bank was invalid. The bank held a mortgage on the company's land to secure an indebtedness of $10,500. The assignment of the contracts to the bank on March 17, 1933, was made for the purpose of furnishing the bank with additional security for the payment of this debt. That is clear from the language of the assignment, which provided that the contracts should not be reconveyed to any person not the holder of the mortgage. In short, the land company furnished the bank with two types of security: a mortgage on its real property and an assignment of the moneys to become due under the contracts. The mortgage having been foreclosed and the bank having taken title, the question arises as to the status of the contracts.

A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt. *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* 120 Conn. 16, 25, 179 A. 339; *Gruss* v. *Curry,* 132 Conn. 22, 26, 42 A.2d 358. All rights of the land company as mortgagor of the real estate were thus terminated. Thereafter, the bank could convey the real estate to whomsoever it willed. The appropriation of the real estate, however, did not pay the debt in full unless the value of the real estate equaled or exceeded the amount of the debt; otherwise, it was only a payment pro tanto. The unpaid balance continued to be collectible as against anyone who was liable on the debt and had been made a party to the foreclosure. *Acampora* v. *Warner,* 91 Conn. 586, 588, 101 A. 332; *Cion* v. *Schupack,* 102 Conn. 644, 649, 129 A. 854; *Bergin* v. *Robbins,* 109 Conn. 329, 333, 146 A. 724; *Cronin* v.

*Gager-Crawford Co.,* 128 Conn. 688, 695, 25 A.2d 652; General Statutes § 7191.

In the absence of any finding that the value of the real estate was equal to or exceeded the amount of the debt, the liability of the land company to the bank for the unsatisfied balance continued. While the bank quitclaimed the land and transferred the contracts, it did not assign its right to the balance on the debt. That remained the property of the bank, and it failed to take appropriate action to utilize the security of the contracts to bring about a further satisfaction of the debt. Its agreement with the land company was that the contracts would not be conveyed to any person who was not the holder of the mortgage. The condition of the pledge of these contracts as security was such, therefore, that they would continue, after the foreclosure of the mortgage, to furnish security for the payment of the balance of the mortgage debt. The bank was powerless to transfer them to a third person and at the same time retain its right to the balance due on the mortgage indebtedness. 41 Am. Jur. 624, 628-30, 641. The trial court was correct in concluding that the purported assignment of the contracts to the plaintiff's assignors was invalid.

There is no error.

In this opinion the other judges concurred.