## Mable W. Hurlbutt *v.* Lelette D. Hurlbutt

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 18-6610-2435

Argued June 28, 1967—reargued February 2, 1970—decided
April 10, 1970[1]

---

[1] Because of the illness of one of the judges hearing the original argument and the retirement of another judge, it was decided that the case should be reargued before the present panel. Technically, this is not a reargument but a second presentation of the original argument, owing to the unfortunate and unforeseeable circumstances mentioned.

Michael Schless, of Hartford, for the appellant (defendant).

Paul W. Orth, of Hartford, for the appellee (plaintiff).

KOSICKI, J. The finding, with such corrections as were made by the trial court, discloses the following situation. On September 15, 1960, the plaintiff sold to the defendant a residence located on one acre of land in the town of Canaan for a price of $32,500. In order to pay this price, the defendant gave a first mortgage to the Connecticut Bank and Trust Company in the sum of $27,500; she also gave to the plaintiff in partial payment of the purchase price a second mortgage as security for the $3000 note which is the subject of this action. The defendant has paid nothing on the principal of this note, which was payable on or before September 15, 1965.

Because defendant was in default on the first mortgage note, the Connecticut Bank and Trust Company, on March 6, 1964, obtained judgment of strict foreclosure. The plaintiff, as second mortgagee, was assigned November 4, 1964, as her law day under the judgment. On that date, knowing defendant's poor financial condition, she redeemed, paying the sum of $28,030.39 in order to do so. To finance this redemption, she executed a mortgage on the property to the New Milford Savings Bank in the sum of $30,000. At the time she redeemed, the plaintiff was unaware of the dilapidated condition of the interior. The plaintiff held legal title to the premises until June, 1966, at which time she quit-

claimed the property to the New Milford Savings Bank. By doing so, she obtained a release of the mortgage held by the bank.

During the time that the plaintiff held title she paid $2496.05 interest to the New Milford Savings Bank, $1124.97 for repairs, $607.52 for property taxes, and $464.14 for fuel oil, making a total of $4692.68 for expenses, less an interest deduction of $166, making a net expense of $4526.68. These expenses were offset somewhat by $750, being a portion of a forfeited deposit by a prospective purchaser, and by the sum of $895, which was received from an insurance company for damage to the roof of the dwelling. These items total $1645. In addition, the plaintiff realized an excess of $1969.61, being the difference between the $30,000 obtained on the mortgage from the New Milford Savings Bank and the $28,030.39 she paid to redeem. The plaintiff did not occupy or rent the premises while she held title. The following facts were considered by the court as being pertinent to the value of the premises: In 1957, the plaintiff purchased the property for $35,000, the land then consisting of seven acres. In 1960, plaintiff sold it to the defendant for $32,500, retaining six acres for herself. On March 6, 1964, the date of the foreclosure judgment, appraisals were $40,000 and $45,000. The appraisers were not produced at the trial in the instant case. On November 4, 1964, the plaintiff mortgaged the property to the New Milford Savings Bank in the sum of $30,000. The bank's appraisers did not at this time view the interior of the dwelling, which was in need of repair. On November 4, 1964, appraiser Borden found the property then to be worth $25,000. It was then in need of substantial repairs. Borden had considerable knowledge of sales and values of comparable properties in the area. In June, 1966, the plaintiff conveyed the property to the New Milford Savings

Bank for a release of its mortgage, which was then in the principal sum of $28,921.05. During October, 1966, the bank sold the property to another party for $31,500, less broker's commission. The bank had maintained the grounds. The plaintiff had made repairs previously, as well.

The defendant remained in possession until her law day in November, 1964. During this period, from the date of the foreclosure judgment until her law day, she attempted, without success, to sell at a suitable figure. While the plaintiff held title, from November, 1964, until June, 1966, she attempted, also without success, to sell the property at a satisfactory price. During this period, she obtained an agreement to buy for $32,500. However, the prospective buyer within a short time refused to take title, thereby forfeiting a deposit of $1500.

Upon the foregoing facts, the court concluded that the note sued on is in default and is due and payable in the amount of $4363.70; that the special defense of appropriation or merger, urged by the defendant, was not applicable; that the plaintiff did not intend, by redeeming, to cause a merger or to appropriate the property to the payment of the debt; that the market value of the property during the period when plaintiff held title was $28,000; that, by redeeming, the plaintiff actually lost money; and that the plaintiff was diligent and vigorous in her attempts to obtain a suitable price for the property during the time she held title.

The defendant has attacked numerous paragraphs of the finding and we shall consider those which are necessary to determine the ultimate conclusion of the court that the plaintiff is entitled to recover from the defendant the various items of damage enumerated by the trial court. Where facts are found on conflicting evidence the finding must stand.

In the first and second assignments of errors, the defendant seeks to substitute her version of contested evidence for that found by the court. The defendant's motion to correct fails to demonstrate any of the legal reasons for correcting the finding as permitted by Practice Book § 985. A motion to correct the finding by striking certain facts found is futile where, as here, those facts are supported by evidence and the facts sought to be added are neither admitted nor undisputed. *State* v. *Coulombe,* 143 Conn. 604, 609; *Armstrong* v. *Watrous,* 138 Conn. 127, 128. A fact is not admitted or undisputed merely because it is uncontradicted. *Mercier* v. *American Refractories & Crucible Corporation,* 151 Conn. 559, 560; *Goldblatt* v. *Ferrigno,* 138 Conn. 39, 41. Where there is conflicting evidence, the trier determines the credibility to be given to the testimony. *Morrone* v. *Jose,* 153 Conn. 275, 277; *Jarrett* v. *Jarrett,* 151 Conn. 180, 181. Furthermore, corrections can be made only as to relevant and material facts. Apparently, the defendant is seeking not only to retry the case but, in her motion to correct, to make up deficiencies in her proof at trial, namely, the failure to produce either of the New Milford Savings Bank's appraisers for their expert opinions, subject to cross-examination, and the failure to detail or evaluate the improvements in the structure the defendant allegedly made.

In her third and fourth assignments of errors, the defendant attacks three of the six conclusions of the court. These conclusions are sustained by the facts found and are legally and logically correct. *Osuch* v. *Osuch,* 146 Conn. 90, 93; *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 692; Maltbie, Conn. App. Proc. § 165.

The short answer to the defendant's fifth assignment of error, which presumably relates to the testi-

mony furnishing the basis for a paragraph of the finding, is that the defendant has failed to comply with Practice Book § 989 (4), especially the second sentence thereof. Consequently, no error has been properly assigned, and the court's ruling may not be reviewed. *State* v. *Guillet,* 3 Conn. Cir. Ct. 380, 381, and cases cited; *State* v. *St. Amand,* 2 Conn. Cir. Ct. 634, 637.

If we assume the existence of grounds for review and a timely objection based on irrelevancy, the relevance of the plaintiff's postredemption expenses to the question of what satisfaction, if any, she had on the debt owed her is readily apparent. The defense and reply in this case arise out of a mortgage foreclosure, and that is an equitable proceeding. *Gruss* v. *Curry,* 132 Conn. 22, 26. As will appear later, the value of the foreclosed property at the time of redemption is controlling. This value depends on expert opinion, derived from knowledge of market factors, and becomes more difficult of ascertainment where, as here, the property is not readily marketable. It required over two and one-half years to sell the property. Thus it was equitable to both parties for the court to consider factors such as necessary expenses arising within a reasonable period of time after redemption while diligent efforts were being made to realize on the property. *Jacobs* v. *Kupperstein,* 112 Conn. 607, 611. And it would be clearly inequitable to disregard the plaintiff's expenses and yet charge her with the receipts. It is evident, moreover, that the excess of $1969.61 between the mortgage enabling the plaintiff's redemption and her cost to redeem was not retained for her benefit but was used by her in paying amounts due on the New Milford Bank mortgage. In any event, the admission of such testimony was, at most, harmless error, not justifying a new trial. Practice Book § 985. The defendant has not attacked what we regard as the

crucial conclusions of the court, that the market value at redemption was $28,000, and that the plaintiff lost money by redeeming. In view of these conclusions, particularly the conclusion that the value of the property at the time of redemption was somewhat less than the amount paid by the plaintiff to redeem, it is difficult to see how the defendant could have been harmed by evidence showing that the plaintiff's outlay, and consequent loss, was even greater.

The main issue raised by the defendant is that the court erred in concluding that the redemption by the plaintiff, as second mortgagee, in the foreclosure proceedings brought to judgment by the owner of the first mortgage, did not constitute an appropriation or merger so that the plaintiff's debt was thereby extinguished. The trial court not only found the existence of facts to support its conclusions but, in its citations of authority, placed its reliance on the correct and applicable rules of law.

The doctrine of appropriation applies where the value of the property at the time of redemption equals or exceeds the amount of the debt. If the estate is not of sufficient value to extinguish the debt, then its value is applied against the debt pro tanto. *Bugg* v. *Guilford-Chester Water Co.,* 141 Conn. 179, 182; *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* 120 Conn. 16, 25.

It has also been held that redemption by a subsequent mortgagee does not extinguish the debt when that was not the intention of the mortgagee in view of the disparity between the actual value of the mortgaged property and the debt. "In the absence of any intention, it is presumed in equity that the party against whom the merger is claimed to have taken place intended to pursue the course which would best

protect and promote his interests, and it is never presumed that a merger resulted where that condition would be productive of injustice to the mortgagee or injurious to his interests, by depriving him of rights which he could claim and exercise by avoiding a merger." *In re Feeney Tool Co.,* 300 F. 379, 381. Merger is not favored in equity unless it promotes the intention of the parties. *Equitable Trust Co.* v. *Delaware Trust Co.,* 30 Del. Ch. 348, 369. A merger occurs where there is no evidence of a contrary intention of the parties or prejudice resulting to the mortgagee-grantee. *Glotzer* v. *Keyes,* 125 Conn. 227, 235.

The trial court found that the value of the property on redemption by the plaintiff was $28,000. There was credible evidence to support that conclusion. This court is not empowered to correct or reject that finding. That conclusion must of necessity be a matter of opinion which the trial court, in the exercise of its reasonable discretion, arrived at upon taking into account all of the evidence presented. *Whewell* v. *Ives,* 155 Conn. 602, 608; *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 585.

Although the mortgagee's acquisition of the equity of redemption may at times cause a merger of the mortgage and debt and an extinguishment of personal liability on the note, this result is primarily a matter of intention, and the debt will not be extinguished where it appears to be the intention and in the interest of the mortgagee that the debt remain outstanding. *Simpson* v. *Hall,* 47 Conn. 417, 424; *Bassett* v. *Mason,* 18 Conn. 131, 137. A merger is never presumed where it would be injurious to the mortgagee, and the doctrine does not apply to a nonforeclosing party who redeems to protect his own interest. *In re Feeney Tool Co.,* supra, 382.

The conclusion of the court that the plaintiff did not intend by redeeming to cause a merger or to appropriate the property to the payment of the debt is amply supported by the plaintiff's testimony and evidence as to the following circumstances. The defendant's poor financial condition was such that, by proceeding otherwise, the plaintiff might receive no satisfaction of her note. The history of the property forcibly illustrated that it was impossible for the plaintiff, even after exerting the utmost diligence, and even after the expenditure of money to keep the property safe and marketable, to sell without sustaining the losses indicated by the judgment.

The court found that the plaintiff was prompt in bringing suit on her unpaid note within three months after it was definitely established that she had not received even partial satisfaction. The plaintiff did not institute the foreclosure action on the property, as appears above, and she could not have sought a deficiency judgment in that action. She received no satisfaction in property or money towards any part of the debt owed by the defendant. The act of taking possession of the property would have extinguished the debt if the property were of equal or greater value than the amount of the debt. *Bergin* v. *Robbins,* 109 Conn. 329, 334. Here the very opposite happened, and the mere taking possession of the property did not wipe out the debt.

There is no error.

In this opinion CASALE and JACOBS, Js., concurred.