A & M REALTY *v.* ALBERT J. DAHMS, JR., ET AL.
(13878)
(13879)

PETERS, C. J., SHEA, COVELLO, BORDEN and SANTANIELLO, Js.

Argued October 2, 1990—decision released January 8, 1991

*D. Jefferson Blackwell, Jr.,* for the appellant-appellee in the first appeal (defendant Lee Tyrol).

*Susan V. Tirrell,* certified legal intern, with whom was *Frederick W. Ward II,* for the appellant-appellee in the second appeal (named defendant).

*Helen Sfikas Myers,* with whom was *Roger Eisenstein,* for the appellee-appellant in both appeals (plaintiff).

COVELLO, J. This is a suit on a promissory note. The dispositive issues are: (1) whether the trial court correctly applied the equitable doctrine of appropriation in determining the sums due on the note; and (2) whether the trial court abused its discretion in the

value it assigned to certain real property that had been the subject of a prior foreclosure action. We conclude that: (1) there is mathematical error in the application of the appropriation doctrine; and (2) the value assigned to the real property is within the broad discretion reposing in the trial court in such instances. We therefore order that the judgment be modified accordingly.

On April 22, 1985, the plaintiff, A & M Realty, sold to the defendants, Albert J. Dahms, Jr., and Lee Tyrol, real property located at 611 Palisado Avenue, Windsor, for $375,000. To pay the purchase price, the defendants borrowed $260,000 from The Windsor Bank and Trust Company (bank) secured by a first mortgage on the Palisado Avenue premises. The defendants paid the balance of the purchase price by executing their $215,000 promissory note payable to the plaintiff. As security for this second note, the defendants gave a purchase money second mortgage on the Palisado Avenue premises. The plaintiff disbursed the balance of the proceeds of the $215,000 note, approximately $100,000 after adjustments, to the defendants in cash.

On April 6, 1987, the defendants having failed to make the payments due on the first mortgage, the bank obtained a judgment of strict foreclosure. The defendants failed to redeem on the law day assigned to them. On May 19, 1987, the law day assigned to the partnership, the plaintiff redeemed the property by paying the bank $297,000 in full satisfaction of the defendants' debt due the bank. As of that date, title to the premises became absolute in the plaintiff.

On July 10, 1987, the defendants having failed to make the payments due on the second mortgage note, the plaintiff began the present action seeking the balance due on this instrument. The defendants filed a counterclaim alleging an unjust enrichment in that the

value of the Palisado Avenue premises exceeded not only the amount paid to the bank to redeem the property, but also the amount due the plaintiff on the second mortgage note. On October 25, 1989, the trial court rejected the defendants' counterclaim as to the value of the property, and rendered judgment for the plaintiff to recover $253,013.35, the balance that it found due on the note after applying the equitable doctrine of appropriation that allowed a credit of $38,000 to the defendants.

The defendants appealed to the Appellate Court and the plaintiff cross appealed. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

The defendants first claim that the trial court erred in its application of the doctrine of appropriation. Specifically, the defendants claim that the trial court miscalculated the amount due the plaintiff in applying the doctrine. The doctrine of appropriation applies where the value of the property at the time of redemption equals or exceeds the amount of the debt or debts involved. *Bugg* v. *Guilford-Chester Water Co.,* 141 Conn. 179, 182, 104 A.2d 543 (1954). If the value of the land is greater, application of the doctrine may extinguish the debt or debts and prevent further action on the underlying notes.

Once a mortgagor loses the right to redeem, the "judgment of strict foreclosure . . . constitutes an appropriation of the mortgaged property to satisfy the mortgage debt." Id. "The appropriation of the real estate, however, [does] not pay the debt in full unless the value of the real estate equaled or exceeded the amount of the debt; otherwise, it was only a payment pro tanto." Id.; 55 Am. Jur. 2d, Mortgages § 904.

In the present case, the trial court determined that the property's value at the time of redemption exceeded

the amount paid by the plaintiff to redeem and, therefore, the defendants were entitled, under the appropriation doctrine, to an equitable credit on the sums owing on the note. In the calculation of the credit due the defendants, however, based on the predicate facts found, there was mathematical error that had the effect of debiting the defendants twice for the approximately $100,000 cash that they received at the closing thereby erroneously reducing the equitable credit by $100,000.[1] A modification of the judgment is therefore necessary.[2]

---

[1] The trial court found that "[t]he defendants at the closing got a cash benefit of *$100,000.00*. By virtue of plaintiffs paying the Bank the defendants also received a benefit of $297,000.00. The sum of those two benefits is $397,000.00. When the fair market value of the property ($435,000.00) is compared with that sum the court finds that the difference is $38,000.00. . . .

"The court finds the present debt calculated as follows:
Principal amount of *$215,000.00*

| | |
|---|---|
| reduced by 24 payments | $211,356.50 |
| Equitable credit | (38,000.00) |
| | $173,356.50 |
| Interest on unpaid principal balance | 44,511.70 |
| Late Charge | 2,145.15 |
| Attorney fees | 33,000.00 |
| TOTAL: | $253,013.35 |

Judgment for plaintiffs on the complaint for $253,013.35 plus costs. Judgment for plaintiffs on the counterclaims." (Emphasis added.)

By reducing or charging the defendants' interest both the $100,000 cash and the full amount of the $215,000 debt, the trial court's calculation erroneously debited the defendants the $100,000 twice since the $100,000 was part of the original loan of $215,000.

[2] In determining the amount due the plaintiff and the appropriation doctrine's impact on the defendants, the trial court's predicate findings should have been depicted as follows:

| Credit Due Plaintiff | | Due Defendant | |
|---|---|---|---|
| Redemption | $297,000.00 | Market Value | $435,000.00 |
| Note Balance | 211,356.50 | | |
| Interest | 44,511.70 | | |
| Late Charges | 2,145.15 | | |
| Attorneys Fees | 33,000.00 | | |
| Total | $588,013.35 | | |
| Less FMV | 435,000.00 | | |
| Due Plaintiff | $153,013.35 | | |

The defendants next claim that the trial court erred in finding the value of the Palisado Avenue premises to be $435,000 as of May 19, 1987, the date of redemption. Specifically, the defendants argue that the trial court was required to accept their appraiser's $515,000 estimate of the property's value as this figure was within $10,000 of the $525,000 sum that the plaintiff actually realized upon the subsequent sale of the premises on July 13, 1988.

The trial court heard conflicting evidence on the issue of valuation. John Kenny, the plaintiff's appraiser, testified that the fair market value of the property was $435,000. Kenny, who had actually viewed the property, testified that it was in poor condition and in need of repair. He derived his estimate of the value based upon his observations, an examination of the sales prices of comparable properties and also upon a capitalization of this property's income. William Betts, the defendants' appraiser, testified that the fair market value of the property was $515,000. Betts, who had never viewed the property, based his estimate of the fair market value upon the assumption that the property's condition and quality of construction were average. Further, there was evidence that required repairs would significantly decrease the appraised value. There was no evidence as to what, if anything, was done to the property after its redemption and prior to the subsequent sale for $525,000 on July 13, 1988. Further, there was no evidence as to the financial terms of this subsequent sale.

"While it is true that a recent sale of the subject realty resulting from ' "fair negotiations between a desirous buyer and a willing seller . . ." ' will ordinarily be the most reliable indicator of fair market value, the particular facts of this case [or the absence of them,]

remove it from this general rule." *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 71, 459 A.2d 999 (1983). Since there was no evidence presented as to the condition of the property at resale or the terms of the agreement that led to its subsequent resale, the trial court was well within its inherent discretion in adopting the estimate of value furnished by Kenny, the only expert who had actually viewed the property.

"Ultimately, the determination of the value of the land depended on the considered judgment of the [trial court], taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties. . . . There is nothing to show that in determining the value of the plaintiffs' land the [trial court] misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was his duty to regard." *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612 (1961).

In its cross appeals, the plaintiff argues that it had the option of pursuing a deficiency judgment in equity in the bank's foreclosure action or pursuing an independent legal action on its underlying promissory note. See *First Bank* v. *Simpson,* 199 Conn. 368, 375, 507 A.2d 997 (1986); *Hartford National Bank & Trust Co.* v. *Kotkin,* 185 Conn. 579, 581, 441 A.2d 953 (1981). Because it elected to pursue its remedy at law in a separate suit upon the note, the plaintiff claims that this barred the trial court from applying any equitable principles, especially the doctrine of appropriation, in determining the sums due on the note.

This argument implies that there is a separability between actions in law and equity that is in some fashion inviolate and that the selection of an action at law precluded the trial court from applying equitable prin-

ciples in determining the amount due on the note. While there may be an historical basis for the administration of legal and equitable claims by separate tribunals in separate actions in other states, this is not the case in Connecticut. See 2 Z. Swift, Digest (1823) pp. 14–15.[3] "Whatever may have been the rule when actions in equity were separately heard and determined, it does not conform to our present practice where both legal and equitable issues may be joined, heard and determined in one action, and where both legal and equitable relief may be had in the Superior Court." *Gaul* v. *Baker,* 105 Conn. 80, 84, 134 A. 250 (1926).

The plaintiff further claims that the parties had an adequate remedy at law, i.e., the present suit on the note, and, therefore, the trial court should not have considered the defendants' argument as to an equitable appropriation in determining the amounts due on the note. We disagree for two reasons.

First, the plaintiff elected to pursue the equitable remedy of redemption in the bank's foreclosure action as the means of protecting its security interest in the Palisado Avenue property. Having invoked the court's equitable powers to its presumed benefit in one proceeding, the plaintiff cannot now claim that equity is powerless to act in a second action involving two of the parties to the prior action, when the second action implicates a similar security interest created by the same defendant in the same property. *Turner* v. *Davis,* 48 Conn. 397, 400 (1880); *Feroleto* v. *Dolan Steel Co.,* 21 Conn. Sup. 170, 171, 149 A.2d 908 (1958). Second, the doctrine of the availability of an adequate remedy at law is to be measured from the perspective of the

---

[3] Practice Book § 133 provides in relevant part: "In any civil action the plaintiff may include in his complaint both legal and equitable rights and causes of action, and demand both legal and equitable remedies . . . ." See also General Statutes § 52-97.

party claiming the equitable relief and is not necessarily limited by the cause of action chosen by the plaintiff. Here, the defendants' defense at law, i.e., a general denial, was inadequate as there was no question but that the note was due and unpaid. There was no defense in law available to the defendants that could have put in issue their claim as to the very substantial equity gained by the plaintiff in its earlier redemption of the Palisado Avenue property. If the defense at law is inadequate, equity has jurisdiction. *Bomeisler* v. *Forster,* 154 N.Y. 229, 240, 48 N.E. 534 (1897).

The judgment is affirmed and the matter is remanded, however, with direction to modify the amount awarded the plaintiff in accordance with this opinion.

In this opinion the other justices concurred.

