NATIONAL CITY MORTGAGE COMPANY *v.*
MARYANNE STOECKER ET AL.
(AC 25963)

Dranginis, Bishop and Hennessy, Js.

Argued September 21, 2005—officially released January 3, 2006

*Robert A. DeMarco*, for the appellant (defendant Citifinancial, Inc.).

*Patrick Crook*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. This appeal concerns an action for the foreclosure of a mortgage in which the defendant Citifinancial, Inc.,[1] the holder of a second mortgage, appeals from the supplemental judgment of the trial court in favor of the plaintiff, National City Mortgage Company. Following the judgment of foreclosure by sale, the court granted the plaintiff's "amended motion for determination of priorities and supplemental judgment," calculating the debt to the date of the granting of the supplemental judgment and effectively diminishing the funds that would otherwise have been available to sub-

---

[1] The named defendant, Maryanne Stoecker, has taken no part in this appeal. In this opinion, we refer to Citifinancial, Inc., as the defendant.

sequent encumbrancers. On appeal, the defendant claims that the court improperly (1) calculated the plaintiff's debt in the supplemental judgment, (2) admitted into evidence the plaintiff's September 13, 2004 affidavit of debt and (3) found a mistake in connection with the plaintiff's bid at the foreclosure sale. This case requires us to discuss the right of a mortgagee, who is also the successful bidder in a foreclosure sale, to legitimately incur debt against the property. We reverse the judgment of the trial court and remand the matter for further proceedings.

The following facts and procedural history are relevant to the defendant's appeal. On March 1, 2004, the court rendered judgment of foreclosure by sale and set a sale date for June 5, 2004. The court found the plaintiff's debt as of that date to be $138,312.07, and awarded attorney's fees of $1700 and taxed costs in the amount of $1066.20.

At the auction held on June 5, 2004, the plaintiff bid $156,662. The plaintiff was the sole bidder. The notice to bidders, prepared by the committee of sale appointed by the court, stated that the buyer was purchasing the property subject to taxes (which the committee indicated were paid), and water and sewer assessments (which the committee indicated were $1207.09). The bond for deed, executed on June 9, 2004, also provided that the property was being sold subject to taxes and water and sewer assessments. The bond for deed further provided that the transfer of title should be within thirty days of approval of the sale by the court.

The sale was approved by the court on July 6, 2004. On that date, the court also approved committee fees and costs in the amount of $4655.20. The committee deed was recorded in the land records on July 20, 2004. The committee deed also provided that the property

was being conveyed subject to all taxes, sewer assessments and sewer charges.

On August 23, 2004, the plaintiff filed a "motion for determination of priorities and supplemental judgment," to which the defendant filed an objection. In its motion, the plaintiff asserted that the total debt, including interest, counsel fees and costs as of August 20, 2004, was $152,289.44. On August 24, 2004, the defendant filed a "motion for determination of priorities, entry of supplemental judgment and disbursement of foreclosure sale proceeds," in which it claimed that the difference between the plaintiff's bid and the amount of the debt should pass to it as the second mortgagee.[2] On September 13, 2004, the plaintiff filed a motion for an extension of time to provide the court with an original affidavit in support of its motion for supplemental judgment. It attached a fax copy of the affidavit, the original of which would later be admitted into evidence as plaintiff's exhibit one. The affidavit set out expenses paid by the plaintiff in the amount of $7111.90, expended between March 1 and September 13, 2004, after the judgment of foreclosure. Those costs included real estate taxes in the amount of $2819.10, private mortgage insurance premiums of $418.80, hazard insurance premiums of $843 and property maintenance of $3031. On September 13, 2004, the defendant filed an objection and defenses to the plaintiff's affidavit of debt in support of the motion for a supplemental judgment. On September 16, 2004, the plaintiff filed an "amended motion for determination of priorities and supplemental judgment," and an amended affidavit of debt. That affidavit, which was dated September 14, 2004, and notarized on

---

[2] The difference between the plaintiff's bid, $156,662, and the amount of the debt claimed by the plaintiff as of August 20, 2004, $152,289.44, was $4372.56. Pursuant to General Statutes § 49-27, if the plaintiff has bid an amount in excess of its debt, interest, attorney's fees and costs, including the expenses of the sale, the excess must be paid into court. We note that this procedure was not followed in this case.

June 30, 2004, claimed that the amount of the debt as of October 11, 2004, was $161,371.62, included the previously discussed expenditures in addition to $8525.25 for postjudgment interest for the period of March 1 to October 11, 2004.

On October 21, 2004, the court held a hearing on the motions for a supplemental judgment. At the hearing, the plaintiff submitted the original affidavit of debt executed by its vice president, the fax copy of which was filed on September 13, 2004, and was objected to by the defendant. The defendant renewed its objection to the affidavit at the hearing, claiming that the document was hearsay, and expressed its desire to cross-examine a representative of the plaintiff as to the timing and precise nature of the expenditures claimed by the plaintiff. The court admitted the affidavit into evidence over the defendant's objection. The plaintiff also presented evidence from the tax collector for the town of Winchester as to tax disbursements that were made by the plaintiff. The plaintiff claimed that it was further entitled to postjudgment interest to the date of the supplemental judgment and through the running of the appeal period, for a total debt due to the plaintiff of $162,545.21, leaving no excess funds for the defendant, the second mortgagee.

In an oral decision, the court granted the plaintiff's motion and denied the defendant's motion, stating that the evidence clearly indicated that the plaintiff had made a mistake in its bid, that the equities lie with the plaintiff and that to rule otherwise would create an unfair windfall in favor of the defendant.

I

The defendant first challenges the court's determination of the plaintiff's debt in the supplemental judgment. Specifically, the defendant claims that the court improperly included, as part of the plaintiff's debt, postjudg-

ment interest to the rendering of the supplemental judgment, and payments for sewer, water and real estate taxes, hazard insurance and private mortgage insurance and for property maintenance, which were made between March 1 and September 13, 2004, after the judgment of foreclosure. The defendant contends that as a matter of law, title vests with a successful bidder when the court approves the sale, and, therefore, it cannot claim any debt incurred thereafter. The plaintiff argues, on the other hand, that a successful bidder does not obtain clear title to the subject property until the appeal period following supplemental judgment expires, and, therefore, its debt continues to accrue through that period of time. We disagree with both positions.

We begin by articulating the appropriate standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005).

Because there is no Connecticut appellate authority addressing the issue, resolution of this matter requires an examination of the basic tenets of mortgages and foreclosure. "Connecticut follows the 'title theory' of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property." *Sargent* v. *Smith*, 78 Conn. App. 691, 695, 828 A.2d 620 (2003), rev'd on other grounds, 272 Conn. 722, 865 A.2d 1129 (2005). "In a title theory state such as Connecticut, a mortgage is a vested fee simple interest subject to complete defeasance by the timely payment of the mortgage debt." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Esposito*, 210 Conn. 221, 226, 554 A.2d 735 (1989). The mortgagor has the

right to redeem the legal title previously conveyed by performing the conditions specified in the mortgage document.

The mortgagee's legal title is a defeasible fee subject to an equitable right of redemption that persists until it is foreclosed. *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 258, 708 A.2d 1378 (1998). General Statutes § 49-24 provides that on written motion of any party to a foreclosure proceeding, a mortgage or lien on real property may be foreclosed at the discretion of the court. "Generally, foreclosure means to cut off the equity of redemption, the equitable owner's right to redeem the property. . . . The equity of redemption can be cut off either by sale or by strict foreclosure." (Citations omitted.) *Madison Hills Ltd. Partnership II* v. *Madison Hills, Inc.*, 35 Conn. App. 81, 90, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994).

In Connecticut, strict foreclosure is the rule, foreclosure by sale the exception. A decree of strict foreclosure finds the amount due under the mortgage, orders its payment within a designated time and provides that should such payment not be made, the debtor's right and equity of redemption will be forever barred and foreclosed. Most significantly, the effect of strict foreclosure is to vest title to the real property absolutely in the mortgagee and to do so without any sale of the property. "A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt." *Bugg* v. *Guilford-Chester Water Co.*, 141 Conn. 179, 182, 104 A.2d 543 (1954). "[T]he decree of foreclosure obtained, deliberately and voluntarily, by the mortgagee, is, from its nature, the highest evidence of an appropriation of the pledge; and to its force nothing is added by the comparatively feeble act of taking possession." (Internal quotation marks omitted.) *City Lumber Co. of Bridgeport*,

*Inc.* v. *Murphy,* 120 Conn. 16, 21, 179 A. 339 (1935). In sum, in a strict foreclosure, the vesting of title operates to reduce the debt by the value of the property.

The decision whether to order a strict foreclosure or a sale lies within the discretion of the court. *City Savings Bank* v. *Lawler,* 163 Conn. 149, 155, 302 A.2d 252 (1972). General Statutes § 49-25 sets forth the procedure pursuant to which a foreclosure sale is conducted. The purpose of the judicial sale in a foreclosure action is to convert the property into money and, following the sale, a determination of the rights of the parties in the funds is made, and the money received from the sale takes the place of the property. The vesting of title to a mortgaged property in the mortgagee under a foreclosure decree constitutes appropriation of the property to the payment of the mortgage debt, and, where the value of the property foreclosed exceeds the amount of the mortgage debt, the mortgagee is entitled to nothing more. *Gruss* v. *Curry,* 132 Conn. 22, 25–26, 42 A.2d 358 (1945). Accordingly, when the mortgagee takes title to the property, the fair market value of which exceeds the amount of the debt, its debt is satisfied by virtue of its ownership of the collateral. When the mortgagee becomes the owner of the property and its debt is satisfied, its status as mortgagee ceases and the rights and obligations established by the terms of the mortgage are nullified. See *First National Bank & Trust Co.* v. *Griebel,* 20 Conn. Sup. 460, 463–64, 139 A.2d 503 (1957).

Under Connecticut law, the rights of the mortgagor in the mortgaged property are terminated by confirmation of the foreclosure sale, and subsequent to such sale, any interest the mortgagor may claim is in the proceeds of the sale solely and not in the property. *In re Kane,* 236 B.R. 131, 133 (Bankr. D. Conn. 1999). "[A] judicial sale becomes complete and creates a legal right to obligations among parties when it is confirmed and ratified by the court." *Hartford Federal Savings & Loan*

*Assn.* v. *Tucker,* 13 Conn. App. 239, 247, 536 A.2d 962, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988). Although the court's approval of a sale extinguishes the rights of redemption of other parties, it does not automatically vest title with the purchaser. General Statutes § 49-26 provides that after a sale has been ratified or confirmed by the court, "a conveyance of the property sold shall be executed by the person appointed to make the sale, which conveyance shall vest in the purchaser the same estate that would have vested in the mortgagee or lienholder if the mortgage or lien had been foreclosed by strict foreclosure . . . ." Accordingly, the muniment of title is the conveyance or the delivery of the deed to the purchaser. We therefore conclude that when the mortgagee is the successful bidder at a foreclosure sale, its right to incur debt against a property expires on the date of the conveyance of title or at the expiration of the time specified for the transfer of title in the bond for deed, whichever is earlier.

In this case, the bond for deed required the committee to deliver title to the purchaser within thirty days of the approval of the sale by the court. Because it was required that the transfer of title be effectuated no later than thirty days after the court's approval of the sale, the debt should be calculated as of the date title was delivered or thirty days after the court's approval of the sale, whichever date was earlier. In this case, the record indicates that the committee deed, which was approved by the court on July 6, 2004, was recorded in the land records on July 20, 2004. Although the plaintiff must have obtained title on or before July 20, 2004, a review of the record does not disclose the actual date that title was delivered to the plaintiff.

In support of its claim for taxes, insurance premiums and expenses for property maintenance, the plaintiff refers to the terms of the mortgage. As we stated pre-

viously, however, because the plaintiff's rights under the mortgage were extinguished when it took title to the property, it could not legitimately incur expenses against the property after that date. Although the record is clear that the plaintiff obtained title to the property in this action, the record does not reveal the exact date of transfer, nor does the record disclose the dates on which the expenses claimed by the plaintiff were incurred.[3] It is the burden of the plaintiff to prove that it is entitled to the expenses it is claiming.[4] Accordingly,

---

[3] Although the September 13, 2004 affidavit indicated that the expenditures for taxes, insurance and property maintenance were made between March 1 and September 1, 2004, we note that they were not included in the plaintiff's August 20, 2004 affidavit of debt. Given the lack of evidence on that point, we will not speculate whether that was an inadvertent omission by the plaintiff or whether those expenditures were made after August 20, 2004, and, thus, were not proper.

[4] An additional impediment to evaluating the plaintiff's debt is that the vagueness of its claim for property maintenance prevents a clear understanding of why that claim would not be governed by General Statutes § 49-2 (b), which provides: "Advancements may be made by a mortgagee for repairs, alterations or improvements and are a part of the debt due the mortgagee, provided (1) advancements for such repairs, alterations or improvements shall not be made if the indebtedness at the time of the advancement exceeds the amount of the original mortgage debt; (2) the advancements shall not exceed the difference between the indebtedness at the time of the advancement and the original mortgage debt, if the original mortgage debt is greater than the then indebtedness; (3) the total amount of all of the advancements for repairs, alterations and improvements outstanding at any time shall not exceed (A) one thousand dollars as to mortgages executed and recorded after October 1, 1947, but before October 1, 2004, or (B) five thousand dollars as to mortgages executed and recorded on or after October 1, 2004; and (4) the terms of repayment of the advancements shall not increase the time of repayment of the original mortgage debt."

Additionally, it is not apparent that the plaintiff sought to discover whether private mortgage insurance and hazard insurance had been secured by the mortgagor. See *Eberich* v. *Solomon*, 112 Conn. 498, 502, 152 A. 823 (1931).

The defendant also claims that because both the notice to bidders and the bond for deed state that the premises was being sold as is, subject to taxes and water and sewer assessments, the plaintiff should not be entitled to claim them as part of its debt when it becomes the purchaser of the property. We agree. "[B]ids made at a foreclosure sale will inevitably take into account such a lien . . . because the successful bidder knows that it will be taking the property subject to that lien." *New England Savings Bank*

the matter must be remanded for a determination of priorities as of the date that the plaintiff took title to the property.

## II

The defendant next claims that the court improperly admitted into evidence the plaintiff's September 13, 2004 affidavit of debt in support of its motion for a supplemental judgment.[5] We agree.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Additionally, it is well settled that even if the evidence was improperly admitted, the [defendant] must also establish that the ruling was harmful and likely to affect the result of the trial." (Internal quotation marks omitted.) *State* v. *Vidro*, 71 Conn. App. 89, 98, 800 A.2d 661, cert. denied, 261 Conn. 935, 806 A.2d 1070 (2002).

In determining the plaintiff's debt, the court relied on an affidavit submitted by the vice president of the plaintiff, which was admitted into evidence over the defendant's hearsay objections.[6] In support of its reli-

v. *Lopez*, 227 Conn. 270, 285, 630 A.2d 1010 (1993). The plaintiff's argument would give the mortgagor credit for that lien and would penalize the mortgagee by reducing the amount of the deficiency, solely because the defaulting mortgagor had permitted the property to become encumbered by a real estate tax lien, thus reducing the equity in the property purchased by the successful bidder. We see no basis in our law or policy to justify such a result. See id.

[5] We address this claim because it is likely to recur at the new hearing.

[6] In articulating its decision, the court stated that "the only finding made by the court was that it was the plaintiff's money and that it would be inequitable for this court to compel the plaintiff to pay any portion of the debt that the named defendant owes to Citifinancial, Inc." The court stated that the specific components of the plaintiff's debt "played but a minor part in the court's decision." The court went on to state: "Since, however, the court did approve the plaintiff's amended affidavit of debt, dated September 14, 2004, as the vehicle by which the court's decision was to be implemented, the court, *by implication*, found that the total debt due to the plaintiff, as

ance on the affidavit, the plaintiff claims that Practice Book § 23-18 (a) provides for the use of affidavits to prove debt in foreclosure cases. Citing the same provision of our rules of practice, the defendant notes that the use of an affidavit is appropriate only when no defense as to the amount of the debt is asserted.[7] The defendant claims that the use of the affidavit in this case was inappropriate because it objected to the affidavit several times. Additionally, the defendant claims that it specifically contended that the affidavit was hearsay and sought to cross-examine a representative of the plaintiff to ascertain what was paid, when it was paid, by whom it was paid and why it was paid. Relying on *Connecticut National Bank* v. *N. E. Owen II, Inc.*, 22 Conn. App. 468, 578 A.2d 655 (1990), the plaintiff argues that a mere claim of insufficient knowledge as to the correctness of the amount stated in the affidavit is not a defense as that term is used in Practice Book § 23-18 (a). Our review of the record convinces us that the defendant's claim seeking to establish the chronology and specific nature of the payments was well articulated and is therefore readily distinguishable from a vague claim of insufficient knowledge. Because the defendant challenged the amount of the debt, the use of Practice Book § 23-18 to "introduce the affidavit is prohibited,

of October 11, 2004, was $161,371.62, an amount that exceeds the bid price by $4709.62." (Emphasis in original.)

We note that the affidavit of debt admitted into evidence at the October 21, 2004 hearing was actually the affidavit dated September 13, 2004, which did not include the plaintiff's claim for postjudgment interest. The amended affidavit, however, specifically incorporated by reference the September 13, 2004 affidavit, and therefore the court necessarily relied on the previous affidavit when it approved the September 14, 2004 affidavit.

[7] Practice Book § 23-18 (a) provides: "In any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the judicial authority the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto."

and the hearsay rules apply." *Webster Bank* v. *Flanagan*, 51 Conn. App. 733, 749, 725 A.2d 975 (1999).

Besides testimony from the tax collector of the town of Winchester regarding the taxes, the affidavit was the sole evidence presented by the plaintiff in support of the debt it claimed in its amended motion for a supplemental judgment. The defendant should have been afforded the opportunity to cross-examine a representative of the plaintiff regarding the calculation of its postjudgment debt, particularly to ascertain the precise nature and timing of the claimed expenditures. The court abused its discretion in admitting the affidavit into evidence.

### III

The defendant finally challenges the court's finding that the plaintiff made a mistake in bidding at the foreclosure auction.[8] We agree with the defendant.

"To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the

---

[8] In its articulation, the court stated: "As to the basis of the court's finding that the plaintiff made a mistake in its bid, other than the fact that the plaintiff was bidding against its own debt; other than the fact that the plaintiff is a commercial lending institution and not a charitable organization; other than the fact that [the defendant] should look to its debtor to collect its debt, the court will refer counsel to the following truism: In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . *In re Carissa K.*, 55 Conn. App. 768, 783, 740 A.2d 896 (1999).

"In conclusion, the court's decision was based on principles of equity and common sense. The court read, heard and considered the legal arguments; as noted, factual issues as to what was paid by the plaintiff and when played a minor supportive role in the court's decision." (Internal quotation marks omitted.)

record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cornfield Point Assn.* v. *Old Saybrook*, 91 Conn. App. 539, 564, 882 A.2d 117 (2005).

Because the rights being determined in the supplemental judgment are the rights of the parties in the proceeds of the sale and not in the property, the role of the court at the time of the supplemental judgment is to determine priorities for the disbursement of funds, not to revisit the terms of the sale that have already been confirmed by the court. "[I]t is well established that since the confirmation of a foreclosure sale is the final determination by the court that the mortgaged property was sold at a fair price, the defense of inadequacy of price cannot be raised in subsequent proceedings, and for the purpose of a deficiency decree the price obtained at the sale is conclusive on the question of the market value of the property." (Internal quotation marks omitted.) *Bank of Stamford* v. *Alaimo*, 31 Conn. App. 1, 9, 622 A.2d 1057 (1993). If there is any objection to the terms of the sale, said objection should be made at the time the motion to confirm is considered.

There is no factual support in the record that the plaintiff made a mistake in its bid. There was no objection raised by the plaintiff when the court considered confirmation of the sale, and there was no appeal filed by the plaintiff from the court's confirmation. There was no evidence introduced by the plaintiff, by way of testimony or documentary evidence, that its bid was a mistake. Accordingly, the court's finding of mistake was clearly erroneous.

The judgment is reversed and the case is remanded for further proceedings to redetermine the amount of

the debt and to determine priorities in accordance with this opinion.

In this opinion the other judges concurred.