CHEMICAL BANK AND TRUST COMPANY and Another, as Trustees, etc., Plaintiffs, *v.* ADAM SCHUMANN ASSOCIATES, INC., and Others, Defendants.

Supreme Court, Kings County, January 18, 1934.

*Maloney & Doyle*, for the plaintiffs.

*Szerlip & Szerlip*, for the defendant Ferguson.

BONYNGE, J. In June, 1929, the defendant Margaret Ferguson bought a home in an exclusive residential part of Bay Ridge, near the Shore road, for $17,250. The property was subject to a mortgage of $9,000, which fell due in May, 1930, and was then extended for three years, Mrs. Ferguson signing the extension agreement. In May, 1931, the property passed into the hands of another owner at a price of $17,600. In February, 1933, the plaintiffs, as holders of the $9,000 mortgage, commenced an action to foreclose it, and on August 7, 1933, the property was offered at public auction and knocked down to the plaintiffs, or their nominee, for $500. The referee reported a deficiency of $10,479.70, and judgment for this amount was entered against Mrs. Ferguson on September 11, 1933, she having defaulted upon the motion to confirm the report of sale. On October 6, 1933, the plaintiffs, or their nominee, sold the property to a *bona fide* purchaser for $12,000, all cash. Notwithstanding the fact that their debt appears to have been more than satisfied, the plaintiffs threaten to enforce the deficiency judgment against the small home which now constitutes the sole remaining asset of Margaret Ferguson. The present assessment of the foreclosed property for purposes of taxation is, land, $4,100; improvements, $13,000, or a total of $17,100.

This showing is quite sufficient to shock the conscience of a court of equity, and to spur it to especial diligence in a quest for means to relieve the plight of the unfortunate debtor. Manifestly the sale price of the property was grossly inadequate and any remedy

must stem from that circumstance. Section 108 of the Civil Practice Act provides that "the court, in its discretion, and upon such terms as justice requires, at any time within one year after notice thereof, may relieve a party from a judgment, order or other proceeding, taken against him through his mistake, inadvertence, surprise or excusable neglect." The defendant brings herself squarely within the provisions of this section, and, therefore, her application is timely.

The power of a court of equity to set aside judicial sales on the grounds of fraud, inadequacy and the like has long existed, but is infrequently and sparingly exercised, even in these times of economic upheaval. Within the past few days the learned chief justice of the Supreme Court of the United States, in his epochal prevailing opinion in the Minnesota mortgage moratorium case (*Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; 54 S. C. R. 231, at p. 243), said: " In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience." The same principle found earlier expression by the Court of Appeals in *Matter of Superintendent of Banks* (207 N. Y. 11), where Judge WERNER wrote: " It is, of course, a well-settled rule that the Supreme Court has the general power to set aside judicial sales, and it may be exercised as well after confirmation as before. * * * Although this power is discretionary, yet there must be a basis of fact or circumstance for its exercise."

What " basis of fact or circumstance " exists for challenging this travesty, miscalled an auction sale? It seems almost superfluous to call some recent happenings to mind. Ten months ago every bank in the land was closed and a lamentable number of them have never since reopened. Substantially all of the mortgage guaranty companies in the State are being wound up, or, stated less bluntly, " rehabilitated," and thus a great industry, the backbone of building, as well as of conservatism and thrift, is in ruins. The insurance companies, savings banks and trust estates, formerly generous providers of mortgage money, are literally surfeited with holdings of real estate taken through foreclosure or default. The Legislatures of various States, including our own, have declared the existence of a public emergency and enacted laws designed to relieve helpless debtors. The Federal government, through sheer necessity, has embarked upon a tremendous lending program in an effort to save the homes and farms of the distressed. Banks have largely abandoned their time-honored function of accommodating

the worthy borrower and, instead, pride themselves upon their liquidity, refuse to pay interest on deposits and bring forward fatuous schemes of charging depositors for safeguarding and using their funds. Possession of the very gold with which this judgment debtor doubtless covenanted to pay her obligation, is now declared a crime. Every day at the real estate exchange witnesses the solemn, but costly, farce of offering dozens of parcels of valuable realty, which go to the respective mortgagees without a single competing bid.

It was into this maelstrom of economic forces that Margaret Ferguson was plunged through the default of her grantee and the consequent election of the plaintiffs to call their loan. The law presumes that a wide-awake debtor will, under such circumstances, apply to and obtain from another lender equivalent accommodation and thus protect herself against a possible deficiency judgment. Such a presumption is well enough in normal times but it has no proper place in a topsy-turvy period like the present. In truth and in fact mortgage money is, and for some months has been, practically unobtainable, and one need do no more than compare the day-to-day record of mortgage transactions with those of a year or two ago to satisfy himself on that point. These considerations lead to the conclusion that the sale price of the property was so grossly inadequate that no rights, except possibly those of innocent third parties, can be predicated thereon, and further, that there is a sound " basis of fact and circumstance " for equitable intervention.

The judgment debtor having delayed her attack upon the sale until this time, it is clear that the intervening rights of the innocent purchaser must be respected and hence the sale, as such, cannot be set aside. However, a court of equity may mould its decree to meet the exigencies of a given case (*Clinton Trust Co.* v. *142–144 Joralemon Street Corp.*, 237 App. Div. 789), and if it has power to set aside a sale in its entirety, then equally must it have power to award a less measure of relief. It will accordingly be held, without prejudice to the rights of the present owner, that the sale price was inadequate and affords no basis for the fixation of a deficiency judgment. A similar result has recently been announced by the Supreme Court of Wisconsin in a carefully reasoned opinion (*Suring State Bank* v. *Giese*, 210 Wis. 489; 246 N. W. 556). Said judgment will be vacated and set aside and the parties and their witnesses may attend before me at Trial Term, Part IX, on January 30, 1934, at four P. M., for the purpose of making the proofs necessary to determine the true amount, if any, of the deficiency. Settle order on notice.