NEW ENGLAND SAVINGS BANK *v.* MARK LOPEZ ET AL.
(14558)

PETERS, C. J., CALLAHAN, BORDEN, BERDON, NORCOTT, KATZ and F. X. HENNESSY, Js.[1]

---

[1] This case was orally argued on January 13, 1993, before a court consisting of Justices Callahan, Berdon, Norcott, Katz and Hennessy. Subsequently, the court determined that the case was appropriate for en banc consideration. Chief Justice Peters and Justice Borden were added to the panel and considered the case upon full review of the record, briefs and transcript of the January 13, 1993 oral argument.

Argued January 13—decision released August 24, 1993

*Raymond L. Baribeault, Jr.*, with whom was *Andrew J. Brand*, for the appellants (named defendant et al.).

*Jeffrey R. Godley*, with whom were *Doreen A. West* and, on the brief, *Jackson T. King, Jr.*, for the appellee (plaintiff).

BORDEN, J. The principal issue of this appeal is whether General Statutes § 49-28,[2] which establishes the procedures governing deficiency judgments following foreclosures by sale, is unconstitutional under the due process clause of the United States constitution because it does not provide an evidentiary hearing to determine the fair market value of the foreclosed property for purposes of calculating the amount of the deficiency. The defendants, Mark Lopez and Pauline J. Henson,[3]

---

[2] General Statutes § 49-28 provides: "WHEN PROCEEDS OF SALE WILL NOT PAY IN FULL. If the proceeds of the sale are not sufficient to pay in full the amount secured by any mortgage or lien thereby foreclosed, the deficiency shall be determined, and thereupon judgment may be rendered in the cause for the deficiency against any party liable to pay the same who is a party to the cause and has been served with process or has appeared therein, and all persons liable to pay the debt secured by the mortgage or lien may be made parties; but all other proceedings for the collection of the debt shall be stayed during the pendency of the foreclosure suit, and, if a deficiency judgment is finally rendered therein, the other proceedings shall forthwith abate. If the property has sold for less than the appraisal provided for in section 49-25, no judgment shall be rendered in the suit or in any other for the unpaid portion of the debt or debts of the party or parties upon whose motion the sale was ordered, nor shall the same be collected by any other means than from the proceeds of the sale until one-half of the difference between the appraised value and the selling price has been credited upon the debt or debts as of the date of sale; and, when there are two or more debts to which it is to be applied, it shall be apportioned between them."

[3] Also named as defendants were Wayne Whipple, Stephen B. Watrous Builder, Inc., and Melanie G. Watrous. They have not participated in this appeal. We refer herein to Mark Lopez and Pauline J. Henson as the defendants.

appeal[4] from the judgment of the trial court ordering a deficiency. They claim that following the foreclosure sale, the trial court, *Koletsky, J.,* improperly failed: (1) to grant their request for an evidentiary hearing to establish the fair market value of the mortgaged property, which deprived them of due process of law, and of their rights under the statutes and the Practice Book; (2) to apply the equitable doctrine of appropriation so as to preclude a deficiency judgment; and (3) to exercise its discretion to set aside the foreclosure by sale and order a strict foreclosure in order to provide the defendants with a hearing on the fair market value of the property. We affirm the judgment of the trial court.

The facts are undisputed. In order to secure a promissory note in the amount of $350,000, the defendants executed a mortgage to the plaintiff, New England Savings Bank, on unimproved property located in Groton. Following the defendants' default on the note, the plaintiff brought this foreclosure action in April, 1991.

The plaintiff moved for a judgment of strict foreclosure, and the defendant Stephen B. Watrous Builder, Inc., a subsequent encumbrancer, and the defendant Melanie Watrous, to whom the property had been transferred (Watrous), moved for a judgment of foreclosure by sale. At the hearing on these motions on August 12, 1991, the plaintiff's appraiser, Christopher S. Buckley, testified that the value of the property was $274,000, and the Watrous' appraiser, F. Jerome Silverstein, testified that the value was $563,000. The trial court, *Teller, J.,* found the value to be $490,000, found the amount of the debt to be $385,157.59, and granted Watrous' motion for a judgment of foreclosure by sale.

---

[4] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

Pursuant to General Statutes (Rev. to 1991) § 49-25,[5] the trial court appointed three appraisers to appraise the property.[6]

The plaintiff was the only bidder at the foreclosure sale. Subject to the approval of the sale by the court, the plaintiff purchased the property for $260,000, free and clear of all liens except for a tax lien to the town of Groton in the amount of approximately $23,000. Thereafter, the defendants moved to set aside the sale and for a judgment of strict foreclosure. The trial court, *Koletsky, J.,* denied these motions and approved the sale.

The plaintiff thereafter moved for a deficiency judgment pursuant to General Statutes § 49-28. The defendants objected to the motion claiming that the value of the property was $490,000, as previously found by Judge Teller, which was more than the amount of the debt. The defendants, relying on Practice Book § 528,[7]

---

[5] At the time of the foreclosure hearing, General Statutes (Rev. to 1991) § 49-25 provided in relevant part that, in a foreclosure by sale, "the court shall appoint *three* disinterested persons who shall, under oath, appraise the property to be sold . . . . If they cannot agree, an amount agreed upon by a majority may be accepted by the court at its discretion . . . ." (Emphasis added.)

As of October 1, 1991, § 49-25 provides in relevant part that in a foreclosure by sale, "the court shall appoint *one* disinterested appraiser who shall, under oath, appraise the property to be sold . . . . Upon motion of the owner of the equity of redemption, the court shall appoint a second appraiser in its decree." (Emphasis added.)

[6] Subsequently, the appraisers filed their returns of appraisals of the property pursuant to General Statutes § 49-25. See footnote 5. F. Jerome Silverstein appraised the property at $490,000; Christopher S. Buckley appraised the property at $274,000; and Robert H. Silverstein appraised the property at $350,000.

[7] Practice Book § 528 provides in relevant part: "MOTION FOR DEFICIENCY JUDGMENT

"Whenever a deficiency judgment is claimed in a foreclosure action, the party claiming such judgment shall file with the clerk of the court within the time limited by statute a written motion setting forth the facts relied on as the basis for the judgment, which motion shall be placed on the short

also requested an evidentiary hearing regarding the fair market value of the property. The trial court, *Koletsky, J.,* denied the defendants' request for such a hearing, and rendered a deficiency judgment against the defendants, based on the difference between the amount of the debt and the sale proceeds, in the amount of $155,905.30. This appeal followed.

## I

## A

The defendants first claim that General Statutes § 49-28, as applied by the trial court in this case, is unconstitutional under the due process clause of the fourteenth amendment to the United States constitution.[8] Specifically, they argue that "the calculation of a deficiency in a foreclosure by sale by merely subtracting the sales price from the debt . . . without providing a hearing *to establish the actual value of the property sold* . . . is unconstitutional because it does not provide the mortgagor, who does not request a foreclosure

calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment.

"Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee for hearing and judgment."

[8] Although the defendants did not raise the constitutional basis of their claim in the trial court, in which they relied solely on Practice Book § 528, we exercise our appellate discretion to consider this aspect of the claim in this appeal under *Cahill* v. *Board of Education,* 187 Conn. 94, 100, 444 A.2d 907 (1982) ("where consideration of the question is in the interest of the public welfare"), because: (1) it is in the interest of the public welfare to lay to rest this constitutional challenge to our foreclosure by sale statute, particularly now when foreclosure cases are crowding our trial dockets; (2) no further factual findings or discretionary rulings are required by the trial court to form the basis of such a claim; and (3) the plaintiff is not prejudiced by our consideration of the issue, which has been fully briefed in this court.

sale, with any meaningful hearing during which he can give testimony or present evidence . . . *as to the true fair market value of the property sold at the forced sale."* (Emphasis added.) We disagree.

The defendants' claim is one of *procedural* due process: the right to a meaningful hearing at a meaningful time. The essential premise of their claim, however, is that they have a protected *substantive* due process interest in the "fair market value" of the property sold. This must be the premise of the defendants' argument; otherwise, there would be no reason to determine the fair market value of the property at the hearing that the defendants seek. On the basis of this premise, they argue that in the calculation of a deficiency judgment following a foreclosure by sale, they are entitled to a credit of the "fair market value" of the property sold. Put another way, their argument rests on the premise that, as a matter of constitutional law, a deficiency judgment must be calculated, not by subtracting the amount of the sale proceeds from the amount of the debt, but by subtracting the fair market value of the property from the amount of the debt. Their premise is unsound.

The defendants do not dispute, and we agree, that an entitlement to procedural due process requires an underlying substantive entitlement or protected property interest. See, e.g., *Mathews* v. *Eldridge,* 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We also agree, as a general matter, that the defendants have a protected property interest in the proper measurement of any deficiency judgment that may be rendered against them. We disagree with the defendants, however, that this interest must be measured by the fair market value of the property foreclosed.

The substantive due process entitlement that the defendants claim, namely, an interest in the fair mar-

ket value of the property, must have a basis in some source of state law. See, e.g., *Brady* v. *Colchester,* 863 F.2d 205, 211–12 (2d Cir. 1988) (to determine whether an interest rises to the level of a right protected by the fourteenth amendment, courts must look to " 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits' "); *Fusco* v. *Connecticut,* 815 F.2d 201, 205–206 (2d Cir. 1987) ("The opportunity [under Connecticut's zoning statute] grant[ing] abutting landowners and aggrieved persons to appeal decisions of planning and zoning commissions and zoning boards of appeal is purely procedural and does not give rise to an independent interest protected by the fourteenth amendment.").

We can find no basis, however, in our state law or understandings regarding foreclosure by sale for the proposition that a debtor is legally entitled to a credit for the fair market value of the property sold. A debtor's legal entitlement is, instead, to a credit for the amount of the sale proceeds. "While an evidentiary hearing is required to determine the value of the mortgaged property and thus the amount of any deficiency following a strict foreclosure, such a valuation would be superfluous following a foreclosure by sale. In the latter action the price realized upon the sale of the property fixes the amount for which a deficiency may be entered pursuant to General Statutes § 49-28. *Fairfield Plumbing & Heating Supply Corporation* v. *Kosa,* 220 Conn. 643, 646 n.8, 600 A.2d 1 (1991); see also *Cronin* v. *Gager-Crawford Co.,* 128 Conn. 688, 692–93, 25 A.2d 652 (1942); D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 9.05B, p. 161." (Internal quotation marks omitted.) *Baybank Connecticut, N.A.* v. *Thumlert,* 222 Conn. 784, 788–89, 610 A.2d 658 (1992). The deficiency is

determined by subtracting the sale proceeds from the amount of the debt. Id., 786; *Cronin* v. *Gager-Crawford Co.,* supra, 692.

Furthermore, General Statutes § 49-14 (a),[9] which does provide for an evidentiary hearing to determine the fair market value of property under foreclosure, "applies only to deficiency judgments in strict foreclosure actions." *Fairfield Plumbing & Heating Supply Corporation* v. *Kosa,* supra, 646 n.8.[10] Nor does the

---

[9] General Statutes § 49-14 (a) provides: "DEFICIENCY JUDGMENT. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

[10] The history of our strict foreclosure law partially explains the difference in treatment, for purposes of determining a deficiency judgment, between strict foreclosures and foreclosures by sale. "At common law, a mortgagee was required to elect between a foreclosure action or an action on the underlying debt. In *Derby Bank* v. *Landon,* 3 Conn. 62, 63 (1819), this court held that 'a foreclosure and consequent possession, is in the nature of satisfaction of a debt secured by mortgage. It is deemed an appropriation of the thing pledged, in payment of the demand, for which it was security.' See also *Swift* v. *Edson,* 5 Conn. 532, 534–35 (1825). Because the entry of judgment of foreclosure precluded any further common law proceedings upon the note, the legislature, in Public Acts 1833, c. 18, §§ 1, 2, created the remedy of the deficiency judgment as the only available means of satisfying a mortgage debt when the security is inadequate to make the plaintiff whole. D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 9.05A, p. 158. '[A] statute forbidding suit upon the . . . original indebtedness to recover the deficiency, does not operate to prevent suit upon a judgment for deficiency actually obtained in a foreclosure action.' 2 C. Wiltsie, Mortgage Foreclosure (4th Ed. Eager 1927) § 949, p. 1206.

"Before rendering a deficiency judgment, the court must have a mechanism for establishing the value of the subject property to determine whether and to what extent a deficiency exists. While a foreclosure by sale automatically establishes the value of the property, a strict foreclosure does not have this secondary consequence. Only a proceeding for a deficiency

appraisal procedure provided by § 49-25 supply a basis for the defendants' premise that they are entitled to a credit of the property's fair market value, as opposed to the foreclosure sale proceeds, for purposes of determining a deficiency judgment.[11] That procedure performs two different functions: (1) it gives the trial court guidance on the subsequent question of whether to approve the sale; and (2) it provides the basis for the reduction in the amount of a deficiency judgment permitted to the party who moved for the foreclosure by sale, required under § 49-28.[12] *Cronin* v. *Gager-Crawford Co.*, supra, 692.

judgment following a strict foreclosure establishes the amount of remaining indebtedness." *Fairfield Plumbing & Heating Supply Corporation* v. *Kosa,* 220 Conn. 643, 647–48, 600 A.2d 1 (1991).

Thus, in determining the amount of a claimed deficiency judgment in a strict foreclosure case, the court necessarily must determine the fair market value of the property involved because it is that property that the mortgagee is acquiring in partial or full satisfaction of the debt, and without such a determination there would be no way to determine whether the mortgagee was entitled to such a judgment and, if so, the amount thereof. This is in contrast to a foreclosure by sale case, in which there is no such necessity because the sale proceeds provide a basis for determining the amount of the deficiency.

[11] Indeed, even the "value" of the property upon which the defendants relied in the trial court, and which they reassert on appeal, and on which the dissenting opinions in this court rely—namely, the "finding" by Judge Teller that the value of the property was $490,000—was not made for purposes of deciding whether and in what amount a deficiency judgment should be rendered. Judge Teller made that finding in the course of ruling on the motions for strict foreclosure and foreclosure by sale. Such a finding, which is not required either by our statutes or our Practice Book, is not even binding upon the court in determining whether a deficiency judgment should be rendered in a strict foreclosure action. The valuation for purposes of a deficiency judgment in such an action is entered by the court pursuant to General Statutes § 49-14 (a) and its counterpart, Practice Book § 528. It would be incongruous, therefore, to hold, as the defendants' and the dissenting opinions' arguments suggest, that a valuation that is not even binding for purposes of a deficiency judgment following a strict foreclosure must nonetheless be taken as binding for purposes of a deficiency judgment following a foreclosure by sale.

[12] Pursuant to General Statutes § 49-28; see footnote 2; if the sale proceeds are less than the appraisal under General Statutes § 49-25, "no judg-

Indeed, the usual notion of fair market value is inconsistent with the notion of a foreclosure sale. "[F]air market value is generally said to be the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal." (Internal quotation marks omitted.) *Uniroyal, Inc.* v. *Board of Tax Review,* 174 Conn. 380, 390, 389 A.2d 734 (1978); *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 71, 459 A.2d 999 (1983). An auction sale, such as a foreclosure sale, is not designed to reach that result because there is no opportunity for negotiations, and the seller, namely, the committee appointed by the trial court to conduct the sale, *is* under compulsion to "make a deal," in the sense that it is required to take the highest bid, subject only to the approval of the court.

Moreover, the traditional definition of fair market value implies a seller who is willing to entertain offers, and either rejects them or makes counteroffers and negotiates. That, in turn, implies the willingness to take time to sell, in order to see what the market will bring, and that willingness, in turn, implies a seller willing to take the risk of the market going down.[13] Similarly, a desirous buyer who offers less than what the seller asks takes the risk of the market going up and of another desirous buyer making a higher offer.[14] Nei-

---

ment shall be rendered in the suit or in any other for the unpaid portion of the debt or debts of the party or parties upon whose motion the sale was ordered, nor shall the same be collected by any other means than from the proceeds of the sale until one-half of the difference between the appraised value and the selling price has been credited upon the debt or debts as of the date of the sale . . . ." It is clear, however, that this credit only applies to the deficiency judgment sought by "those parties upon whose motion the sale was made." *Cronin* v. *Gager-Crawford Co.,* 128 Conn. 688, 691, 25 A.2d 652 (1942).

[13] Anyone who has sold real estate in Connecticut in the past five years appreciates what that risk means.

[14] Anyone who bought real estate in Connecticut between 1986 and 1988 appreciates what that risk means.

ther of these scenarios fits the paradigm of the fore-
closure sale, in which there is no asking price, no offer
and counteroffer, and no opportunity for the parties
to incur the respective market risks.

We find confirmation for this construction of § 49-28
in the parallel provision of the Uniform Commercial
Code, which we have recognized as a source of legisla-
tive policy for real property transactions. See, e.g.,
*Olean* v. *Treglia,* 190 Conn. 756, 762, 463 A.2d 242
(1983); *Conference Center Ltd.* v. *TRC,* 189 Conn. 212,
225, 455 A.2d 857 (1983); *Hamm* v. *Taylor,* 180 Conn.
491, 494–95, 429 A.2d 946 (1980). Under General Stat-
utes § 42a-9-504 (2), it is clear that, after a commer-
cially reasonable sale, a secured creditor is entitled to
a deficiency judgment measured by the net proceeds
of the sale in accordance with § 42a-9-504 (1).[15] Gen-
eral Statutes § 42a-9-507 (2)[16] is even more illuminat-

---

[15] General Statutes § 42a-9-504 provides in relevant part: "SECURED
PARTY'S RIGHT TO DISPOSE OF COLLATERAL AFTER DEFAULT; EFFECT OF
DISPOSITION. (1) A secured party after default may sell, lease or otherwise
dispose of any or all of the collateral in its then condition or following any
commercially reasonable preparation or processing. Any sale of goods is
subject to article 2. The proceeds of disposition shall be applied in the order
following to (a) the reasonable expenses of retaking, holding, preparing for
sale or lease, selling, leasing and the like and, to the extent provided for
in the agreement and not prohibited by law, the reasonable attorneys' fees
and legal expenses incurred by the secured party; (b) the satisfaction of
indebtedness secured by the security interest under which the disposition
is made; (c) the satisfaction of indebtedness secured by any subordinate
security interest in the collateral if written notification of demand there-
for is received before distribution of the proceeds is completed. If requested
by the secured party, the holder of a subordinate security interest must
seasonably furnish reasonable proof of his interest, and unless he does so,
the secured party need not comply with his demand.

"(2) If the security interest secures an indebtedness, the secured party
must account to the debtor for any surplus and, unless otherwise agreed,
the debtor is liable for any deficiency; but if the underlying transaction was
a sale of accounts or chattel paper, the debtor is entitled to any surplus
or is liable for any deficiency only if the security agreement so provides."

[16] General Statutes § 42a-9-507 (2) provides: "SECURED PARTY'S LIABILITY
FOR FAILURE TO COMPLY WITH THIS PART. . . . (2) The fact that a better

ing, because it provides that a disposition of secured collateral is conclusively deemed to have been commercially reasonable if it has been approved in a judicial proceeding. A ruling that § 49-28 is constitutionally flawed because it does not permit the mortgagor to establish that the sale proceeds do not equal the property's "fair market value" would imperil these provisions of the Uniform Commercial Code as well. Consequently, we decline to travel that imprudent path.

We conclude, therefore, that state law does not provide a basis for a substantive due process interest in the fair market value of property sold at a foreclosure sale. Absent such a substantive interest, the defendants' procedural due process claim must fail.

Finally, we note that our foreclosure statutes afford some measure of procedural due process for debtors. Procedural due process emphasizes the right to participate in decision-making—a right to be heard, rather than a right to a particular outcome. Our foreclosure statutes permit a mortgagor to be heard regarding the determination of whether there should be a foreclosure by sale and, if so, whether the sale should be confirmed. Furthermore, with notice of the sale, the mortgagor may participate, either by bidding or by attempting to

---

price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable."

increase the likely sales price by interesting other potential bidders in the property.[17] Consequently, we believe that the legislature may constitutionally permit the Superior Court to ascertain the amount of a deficiency judgment in a foreclosure by sale case by subtracting the amount of the proceeds of the sale from the amount of the debt.

## B

The defendants next argue that, even if they had no constitutional right to an evidentiary hearing, they had such a right pursuant to General Statutes §§ 49-14 and 49-28, and pursuant to "the relevant . . . practice book provisions." This argument is without merit.

We have recently stated and reasserted that § 49-14 (a) applies only to strict foreclosure proceedings, and not to proceedings for a deficiency judgment following a foreclosure by sale. *Baybank Connecticut, N.A.* v. *Thumlert,* supra, 789; *Fairfield Plumbing & Heating Supply Corporation* v. *Kosa,* supra, 646 n.8. Furthermore, our discussion in part I A of this opinion disposes of the defendants' claim regarding § 49-28.

With respect to the Practice Book, although the defendants cite no particular provision, we assume that they meant to refer to Practice Book § 528; see footnote 7; which is the provision upon which they relied in the trial court. It is clear, however, that § 528 tracks the language of § 49-14 (a), and is intended to apply only to deficiency judgments in strict foreclosure cases.

---

[17] Thus, the defendants' reliance on *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 409 A.2d 1020 (1979), is misplaced. In that case, we found the applicable strict foreclosure statute constitutionally wanting because the debtor was deprived of a meaningful opportunity to be heard regarding the fair market value of the property. In this case, however, the fair market value is not pertinent, and the debtor does have a meaningful opportunity to be heard at all relevant times.

## II

The defendants next claim that the trial court "should have applied the equitable doctrine of appropriation in determining the amount of the deficiency judgment and should have used the fair market value of the property rather than its sale price in the calculation of the deficiency." We decline to consider this claim, because the record indicates that the defendants did not at any time request the trial court to apply the doctrine of appropriation.

## III

The defendants' next claim is that the trial court should have exercised its equitable discretion to grant their request to set aside the sale and order a strict foreclosure in order to provide them with an evidentiary hearing on the fair market value of the property for purposes of determining the deficiency. We disagree.

As the defendants concede, whether to order a strict foreclosure or a foreclosure by sale is a matter committed to the sound discretion of the trial court, to be exercised with regard to all the facts and circumstances of the case. *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 488, 538 A.2d 1027 (1988). Similarly, whether to set aside a foreclosure sale that has already been approved and to order a strict foreclosure is committed to the trial court's sound discretion. The trial court did not abuse its discretion by denying the defendants' request to do so.

As we have noted, the foreclosure by sale had already been ordered and the sale approved. Indeed, the defendants have never claimed in this appeal that either of those actions of the trial court was improper. Thus, the expenses of the sale have already been incurred. The defendants do not claim that the sale was not held in a commercially reasonable manner, or that the plaintiff acted improperly with regard to the sale except by bidding a sales price that they deem too low.[18] The only

[18] Indeed, it was not the plaintiff but Watrous who had occasioned the foreclosure sale in the first place.

basis for their motion that the defendants presented to the trial court was, in effect, that the sale did not yield the value that Judge Teller had placed on the property earlier—a value that the court was not required to place, and that was, in any event, intended for purposes other than determining the amount of a deficiency judgment. See footnote 11. Under these circumstances, we conclude that the trial court did not abuse its discretion by declining to reverse direction by setting aside the sale and ordering a strict foreclosure.

## IV

The defendants' final claim is that the trial court improperly calculated the deficiency judgment by failing to add to the amount of the successful bid at the sale the amount of the real estate tax lien on the property. This claim is without merit.

As we have noted, in a foreclosure by sale the deficiency is determined by subtracting the sale proceeds from the amount of the debt. *Baybank Connecticut, N.A.* v. *Thumlert,* supra, 786; *Cronin* v. *Gager-Crawford Co.,* supra, 692. That does not mean the sale proceeds plus liens for unpaid taxes on the property.

Indeed, bids made at a foreclosure sale will inevitably take into account such a lien, as the record indicates occurred in this case, because the successful bidder knows that it will be taking the property subject to that lien. The defendants' argument would give the mortgagor credit for that lien and would penalize the mortgagee by reducing the amount of the deficiency, solely because the defaulting mortgagor had permitted the property to become encumbered by a real estate tax lien, thus reducing the equity in the property purchased by the successful bidder. We see no basis in our law or policy to justify such a result.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN, NORCOTT and F. X. HENNESSY, Js., concurred.

BERDON, J., dissenting. I join in Justice Katz' dissent that a hearing to determine the fair market value of the mortgaged property to be used in calculating a deficiency judgment is constitutionally required.[1] I also write separately to identify an independent statutory ground that requires such a hearing.

General Statutes § 49-28, which applies to foreclosures by sale, merely provides that "the deficiency shall be determined." The statute is silent, however, as to the specific procedure for calculating the amount of the deficiency. In interpreting this silence, we are guided by the well established principle that "a foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Burgos,* 227 Conn. 116, 120, 629 A.2d 410 (1993). We are also guided by Practice Book § 528, which provides that the deficiency shall be determined at a judicial hearing at which the court shall "hear the evidence, establish a valuation for the mortgaged property and . . . render judgment for the

---

[1] I also add my comments to the majority's constitutional analysis. The majority concedes that the defendants have a constitutionally "protected property interest in the proper measurement of any deficiency judgment that may be rendered against them." The majority goes one step further, however, and concludes that the defendants must have a substantive due process entitlement to the fair market value of the property. It seems to me that once the defendant has identified a constitutionally protected property interest in the proper valuation of the deficiency judgment, the next step in the analysis is to determine whether he has had the "opportunity to be heard . . . at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). As Justice Katz points out, the "process" that is due is governed by the balancing test in *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The public auction does not satisfy the "meaningful manner" requirement. The amount of the deficiency must be determined at a hearing at which the defendant can present evidence as to the value of the property that was subject to the lien. *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 409 A.2d 1020 (1979).

plaintiff for the difference, if any, between such valuation and the plaintiff's claim."[2] Interpreting § 49-28 to conform to these equitable principles, I believe that a reasonable construction of § 49-28 leads to the conclusion that the deficiency should be based upon the fair market value of the mortgaged property.

I am fully aware that recent dicta of this court has indicated that the amount of the deficiency is predicated on the sale price realized at the public auction. *Fairfield Plumbing & Heating Supply Corporation* v. *Kosa,* 220 Conn. 643, 646 n.8, 600 A.2d 1 (1991) (involving issue of whether General Statutes § 49-14 applies to foreclosure of a judgment lien); *Baybank Connecticut, N.A.* v. *Thumlert,* 222 Conn. 784, 788–89, 610 A.2d 658 (1992) (involving issue of whether time limitations of General Statutes § 49-14 apply to foreclosure by sale). Nevertheless, this is the first time that we have been squarely faced with the specific issue of whether § 49-28, interpreted in light of equitable principles, requires a hearing to determine the fair market value of the property.

It is only reasonable that a deficiency, whether it results from a proceeding in strict foreclosure or foreclosure by sale, should be predicated on the fair market value of the property that secured the loan, and not by a forced sale through a public auction. The distressed sale by public auction does not generally achieve the fair market value of the mortgaged property. See footnote 7 of Justice Katz' dissent. If the amount of the deficiency were determined by a price obtained from the public auction, the defendant mortgagor, as a practical matter, would have no means of protection short of bidding on the property. If the mortgagor could bid on the property in order to ensure that the fair market value were realized, he or she probably would not be involved as a defendant in a foreclosure action in the first instance. On the other hand, foreclosing mortgagees are in a position to protect their interests because they may bid on

---

[2] The majority cites absolutely no authority for its claim that Practice Book § 528 applies only to deficiency judgments in strict foreclosure cases.

the property in order to raise the price to the fair market value. Indeed, the mortgagee, if the successful bidder, is only required to pay to the court "so much of the proceeds as exceed the amount due upon his judgment debt, interest and costs"; General Statutes § 49-27; and is usually excused by the court's order of sale from the deposit requirement.

The facts of this case underscore the inequity of the majority's construction of § 49-28, which allows the deficiency to be determined by the sale price at a public auction. The plaintiff, New England Savings Bank, filed a motion for judgment of strict foreclosure, after the defendants had defaulted on payment of a promissory note secured by a mortgage on certain property. Another defendant, a subsequent encumbrancer, moved for a foreclosure by sale, over the objection of the defendant mortgagors and the plaintiff mortgagee. The trial court, finding the value of the mortgaged property to be $490,000 on the basis of the testimony of the appraisers, and the amount of the debt to be approximately $385,000 (excluding interest and costs), ordered a foreclosure by sale. The plaintiff was the *only* bidder at the auction sale and bid $260,000, free and clear of all encumbrances, except for the tax lien of $23,000. Accordingly, the plaintiff will receive a total value of $622,905.30 to satisfy a debt of only $411,341.50 (including interest and costs).[3] This result simply cannot be characterized as equitable.

By holding that § 49-28 and Practice Book § 528 do not require a hearing to determine the fair market value of the mortgaged premises for purposes of determining a deficiency judgment, this court once again travels down a path that leads to an inequitable result. *Cheshire Mortgage Service, Inc.* v. *Montes,* 223 Conn. 80, 116, 612 A.2d 1130 (1992) (*Berdon, J.,* dissenting). We must

[3] The property value of $467,000 ($490,000 value of mortgaged premises as found by the court less the tax lien of $23,000) added to the deficiency judgment against the defendant mortgagors in the amount of $155,905.30, as found by the court, amounts to $622,905.30.

remember that this court sits "as a court of equity in reviewing this appeal from the granting of foreclosure of the defendants' property." Id.

Accordingly, I dissent.

KATZ, J., with whom BERDON, J., joins, dissenting. Today the majority holds that different treatment should be afforded to debtors who lose their property through foreclosure by sale and debtors who lose their property through strict foreclosure. Only if a debtor's property is taken as a result of a strict foreclosure, the majority maintains, is a debtor's remaining debt offset by the fair market value of the property. The poor soul whose property is taken through foreclosure by sale will have his debt reduced by the price procured at the foreclosure sale. The majority recognizes that this price is not fair market value and that a large disparity will likely result between a deficiency following a judgment of strict foreclosure and a deficiency following a judgment of foreclosure by sale. The hearing held pursuant to General Statutes § 49-14 following strict foreclosure specifically provides for a deficiency to be calculated on the basis of fair market value. The majority reasons, however, that this requirement is merely a necessary mechanism to establish value and the extent of the deficiency calculated. I suggest that the basis for the hearing held to determine the deficiency after a judgment of strict foreclosure rests on more than mere mechanics and has its foundation rooted in notions of due process that must be afforded, as well to those parties who lose their property at foreclosure sales.

Before embarking on this journey, there are some additional facts that deserve mention. At the hearing to confirm the foreclosure sale,[1] the defendants Mark

---

[1] Although the parties dispute whether the plaintiff objected to the oral motion for a foreclosure by sale made by the defendants Stephen B. Watrous Builder, Inc., and Melanie Watrous, the plaintiff indicated a preference that

Lopez and Pauline Henson (defendants) asked that the sale be set aside and that a judgment of strict foreclosure be rendered because a "strict foreclosure at that value [$490,000 as set by Judge Teller] would eliminate the debt." The trial court responded that that would not necessarily be the case; rather, the defendants would be entitled to a new hearing "at which appraisers come in and say gee, we had an auction, the best we could do was two hundred thousand. Nobody bid more than two sixty. So you may well find that you get an appraiser who says it's really now . . . only worth two forty because the market's worse than it was before. So . . . I'm confused as to what result you're going to get except another bite at the apple."[2] Reference was made to the sale price being only 53 percent of the value previously set by the court, but no further arguments were advanced by the defendants that other evidence be taken regarding the property's fair market value or that the court reexamine the file and consult the new appraisals that had been provided pursuant to General Statutes § 49-25.

On November 22, 1991, the plaintiff moved for a deficiency judgment against the defendants. On December 6, 1991, the defendants filed an objection to the motion for a deficiency judgment claiming that the value of the property as of the date of the foreclosure sale was greater than the debt owed. In their objection, the defendants requested a hearing to establish the value of the property for the purpose of calculating the claimed deficiency. On February 24, 1992, the trial court, *Koletsky, J.,* denied the defendants the hearing they requested and found a deficiency of $155,905.30. The deficiency judgment represented the difference

"a strict foreclosure be ordered given the appraised value that was testified [to] by our appraiser and the current economic outlook for this economy."

[2] The trial court also asked the following: "Where does [a strict foreclosure] get you . . . [h]oping . . . [that] after the strict foreclosure that there'll be a new hearing on a deficiency and . . . another Judge will find the property to be worth more than the sale price?"

between the foreclosure sale price of $260,000 and the total debt plus expenses and interest of $411,341.50.

At this deficiency judgment proceeding, the defendants stated that either they had been misled by the court or they had misinterpreted what had been said, but in any event, "the question is still whether or not in a foreclosure by sale—whether or not I should be able to put on evidence regarding the value." The defendants' argument in the trial court and on appeal is that Practice Book § 528 provides for such a hearing and that § 49-28 does not distinguish between foreclosure by sale and strict foreclosure. The defendants claimed "that the value of the property and the price attained by sale might not be the same . . . ." At an evidentiary hearing, the defendants contended, the court "would be able to look at the facts of the case—the bidding, and say there was some interest here. There was more than one party bidding on this and, therefore, the sale act reflects the value of the property."

The defendants' offer to submit a brief in support of their position was deemed unnecessary by the trial court judge because he had "already ruled in a half dozen cases where the issue has been raised that the foreclosure by sale established the value of the property." The court also noted "that in this particular file these issues were raised and argued and opportunity was given for the petition of evidence at the hearing on the objections to the committee report and the motion to approve the committee report and the sale."

On appeal, the defendants claim that the trial court improperly failed to hold an evidentiary hearing to determine the fair market value of the property prior to awarding the plaintiff the deficiency judgment. The defendants argue that they were entitled to this hearing under the due process clause of the fourteenth

amendment to the United States constitution[3] and General Statutes §§ 49-14[4] and 49-28 and Practice Book § 528. The defendants also raise the alternative claim that the trial court should have exercised its equitable powers to deny any deficiency judgment. Finally, the defendants claim that even if the court was correct in awarding a deficiency judgment, it incorrectly computed the amount. I agree with the defendants that they were entitled to have a hearing to determine the fair market value of the property for the purpose of cal-

---

[3] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty or property, without due process of law."

[4] General Statutes § 49-14 provides: "DEFICIENCY JUDGMENT. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment.

"(b) Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee, who shall have and exercise the powers of the court with respect to trial, judgment and appeal in such case.

"(c) Any party to a mortgage foreclosure who has moved for an appraisal of property for the purpose of obtaining a deficiency judgment, but has not been granted a deficiency judgment, or has not received full satisfaction of any deficiency judgment obtained subsequent to the filing of such motion, may make a motion to the court for a deficiency judgment as set forth in subsection (a) of this section. If such motion is made on or before November 1, 1979, such moving party shall be deemed to have complied with all of the requirements of subsection (a) of this section and shall be entitled to the benefit of any deficiency judgment rendered pursuant to said subsection (a).

"(d) Any appeal pending in the supreme court with regard to any deficiency judgment or proceedings relating thereto shall be stayed until a hearing is held pursuant to subsection (a) of this section. Any appellant in such an appeal shall have the right for a period of thirty days after the rendering of judgment pursuant to subsection (a) of this section to amend his appeal. There shall be no stay of such an appeal if no motion has been filed pursuant to this section on or before November 1, 1979."

culating a deficiency judgment and therefore do not address the remaining claims.

The defendants claim that the failure to hold a hearing after a foreclosure by sale to determine value for the purpose of a deficiency judgment violates their procedural due process rights under the fourteenth amendment to the United States constitution. I agree.

When a debtor's property is foreclosed upon, he has two constitutionally protected property interests potentially to lose: the real property (mortgage) and the deficiency judgment (note). See *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 571, 409 A.2d 1020 (1979). Whether there are adequate safeguards in place under our laws to protect debtors when being deprived of their real property is not presently before this court.[5] As for the deficiency judgment proceeding, due process requires a method of calculating the deficiency that strips debtors of only the amount of money that they obligated themselves to repay.

"There is no question that the property right involved here is constitutionally cognizable. Although the passing of the law day [or approval of sale and closing] has already vested title in the mortgagee, the question of value remains as a determination of how much the guarantor will owe on the note. The questions of

---

[5] In deciding whether to approve a foreclosure sale price, the trial court often has a limited number of options available. It can approve the sale, reject it and order a judgment of strict foreclosure, or it can reject it and order a new sale. D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 6.03C. In certain cases, as when the federal government is a party, the court is not free to convert the judgment into a strict foreclosure without the government's consent. *City Savings Bank* v. *Lawler,* 163 Conn. 149, 154, 302 A.2d 252 (1972). In that instance, the court is, therefore, left with the options of approving the sale or ordering a new one. Unless the trial court is given a strong reason to believe a new sale will bring a better price, it is unlikely that it will order a new sale, which will cause the defendant mortgagor to incur significant additional debt. General Statutes § 49-29. This leaves the court with one option: to approve the sale. Under these circumstances, there is nothing that makes the sale price determinative of value.

whether there will be a deficiency owed, *and of how much,* constitute valid property interests." (Emphasis added.) Id., 571. Once that property right has been recognized, " '[i]t is fundamental that property cannot be taken without procedural due process as guaranteed by the fourteenth amendment to the constitution of the United States and article first, § 10, of the constitution of Connecticut.' *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 376, 362 A.2d 778 (1975)." Id., 570.

The salient inquiry to determine whether § 49-28 violates procedural due process is the balancing test of *Mathews* v. *Eldridge,* 424 U.S. 319, 334–38, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).[6] Three factors will be considered: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id., 335; *Sassone* v. *Lepore,* 226 Conn. 773, 781, 629 A.2d 357 (1993); *Matza* v. *Matza,* 226 Conn. 166, 174, 627 A.2d 414 (1993); *Scinto* v. *Stamm,* 224 Conn. 524, 535, 620 A.2d 99 (1993).

I suggest that, given the protected property interest at stake and the minimal additional burden of a hearing to calculate the deficiency similar to those routinely held pursuant to § 49-14, the method of calculation currently employed does not adequately guard

---

[6] See *Connecticut* v. *Doehr,* 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) (applying test to prejudgment statute); *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (applying test to termination of government employee); *Mackey* v. *Montrym,* 443 U.S. 1, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979) (applying test to suspension of driver's license); *Board of Curators* v. *Horowitz,* 435 U.S. 78, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) (applying test to dismissal of student from medical school).

against an unconstitutional taking of that property interest. Further, I propose that procedural due process requires a method to determine the fair market value[7] of the property which can then be offset against the remaining debt in determining the deficiency judgment.

[7] In general, fair market value is achieved when the sale results from "fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal . . . ." (Citations omitted; internal quotation marks omitted.) *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn 60, 71, 459 A.2d 999 (1983); *A & M Realty* v. *Dahms,* 217 Conn. 95, 100–101, 584 A.2d 466 (1991); R. Washburn, "The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales," 53 So. Cal. L. Rev. 843, 870 (1980). Even in a good economic climate, the auction held pursuant to a judgment of foreclosure by sale does not automatically provide the conditions normally associated with an arms length sale of property between two parties with equal bargaining power. The auction sale is not typically this kind of arms length transaction. That is not to say that the proceeding is an unconscionable one; *Williams* v. *Walker-Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C. Cir. 1965) ("[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party"); however, we would be remiss were we to ignore the realities of distress sales. These realities are even more apparent in a distressed market. B. Dunaway, The Law of Distressed Real Estate § 14.01, p. 14-2. The mortgagor does not have proportionate bargaining power as compared with the mortgagee who is often the sole bidder. Generally, only a few people participate in the bidding process because few people can afford the risks associated with such auctions, including but not limited to forfeiture of the deposit and assumption of the risk of damage to property. See 47 Am. Jur. 2d, Judicial Sales § 313; see also *Wilcox* v. *Willard Shopping Center Associates,* 23 Conn. App. 129, 132, 579 A.2d 130 (1990). Such foreclosure auctions do not provide the usual protections people expect in the average arms length transaction: there is no financing or building inspection contingency and no representations as to title. Therefore, unless a savvy potential buyer retains counsel to review title, he will have little or no protection. These risks can result in fewer viable bidders, thereby creating a situation that frequently allows a successful bidder to purchase property for significantly less than the appraised value previously set by the court. See, e.g., *Cronin* v. *Gager-Crawford Co.,* 128 Conn. 688, 25 A.2d 652 (1942) (appraised value $57,000; sold at properly conducted foreclosure sale for $45,000); *North End Bank & Trust* v. *Mandell,* 113 Conn. 241, 155 A.2d 80 (1931) (appraised value $12,500; sold at properly conducted foreclosure sale for $5000); *Staples* v. *Hendrick,* 89 Conn. 100, 93 A. 5 (1915) (appraised value $16,900; sold at properly conducted foreclosure sale for $10,000); *Central Bank for*

It is without question that the defendants' interest in a deficiency judgment is of sufficient weight to require a hearing. Even § 49-28 implicitly says as much. "[T]he second prong of *Mathews* requires us to measure the risk of an erroneous deprivation of the defendant[s'] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Matza* v. *Matza,* supra, 179. The procedures set forth in § 49-28 and approved today by the majority expose the defendants to a significant risk of deprivation because it strips them of a meaningful ability to have their debt reduced by the fair market value of the property, rather than what is often a bargain basement price paid by the lucky bidder at a forced sale. Although the trial court considers the fair market value when it decides whether to approve the sale, as I have already indicated, there is often little choice. See footnote 5.

---

*Savings* v. *Heggelund,* 23 Conn. App. 266, 579 A.2d 598 (1990) (court found value at $300,000; sold at properly conducted foreclosure sale for $50,000); *Danbury Savings & Loan Assn., Inc.* v. *Hovi,* 20 Conn. App. 638, 569 A.2d 1143 (1990) (appraised value $225,000; sold at properly conducted foreclosure sale for $98,000). Courts and scholars alike have recognized that foreclosure sales frequently produce a price substantially less than the property's fair market value. *Cronin* v. *Gager-Crawford Co.,* supra, 692 (foreclosure sale will likely involve a "sacrifice of value"); *North End Bank & Trust* v. *Mandell,* supra, 245 (foreclosure sale instead of strict foreclosure "causes, in many instances, a sacrifice of value"); *Murphy* v. *Financial Development Corporation,* 126 N.H. 536, 545, 495 A.2d 1245 (1985) (Brock, J., dissenting) ("a foreclosure sale . . . usually produces a price less than the property's fair market value"); see *Illini Federal Savings & Loan Associates* v. *Doering,* 162 Ill. App. 3d 768, 516 N.E.2d 609 (1987), appeal denied, 119 Ill. 2d 557, 522 N.E.2d 1245 (1988); *Federal Savings & Loan Ins. Corporation* v. *Hamilton,* 241 Mont. 367, 786 P.2d 1190 (1990); *First Financial Savings Assn.* v. *Spranger,* 156 Wis. 2d 440, 456 N.W.2d 897 (1990); see also B. Dunaway, supra, § 14.01 ("Generally, property will not sell for as much in a foreclosure sale as it would after a leisurely marketing effort. Often the foreclosure bid is only a fraction of the normal market value."); R. Washburn, supra, 870.

The third prong of the *Mathews* analysis also supports the defendants' contention that they were entitled to the hearing they sought. "[T]he governmental or general public interest, if there be one, is not one that could be characterized as 'extraordinary.' " *Society for Savings* v. *Chestnut Estates, Inc.,* supra, 573. In fact, the judicial system has a very definite and significant interest in ensuring that any taking not be unfair, unreasonable or confiscatory. Moreover, the fiscal and administrative burden that the additional procedural requirement would entail would be de minimis. Indeed, if debtors knew that the sales price would not automatically be determinative of the deficiency judgment, they might be less contentious about the sale and more willing to allow the trial court to approve it. This new procedure at the deficiency hearing, while costing a slight burden to the system, in effect might eliminate some of this contention and consequent court battles that typically transpire earlier in the proceedings.

The hearing would allow the trial court to consider the sales price as well as independent appraisals to arrive at the fair amount by which the defendants' original obligation should be reduced. The sale price obtained at the forced sale would be one indication of value, but the trial court would not be bound by it. "[T]he defendant[s'] interest militates in favor [of this kind] of an evidentiary hearing only if such a hearing would be a more efficacious means of safeguarding that interest than the other procedural protections available to her." *Matza* v. *Matza,* supra, 181. I believe that a hearing similar to that afforded under § 49-14 would be. Certainly this type of hearing would go a long way to ensure that the taking by the plaintiff of the defendants' property would be limited to what the plaintiff is fairly entitled.

The question that arises in my mind is whether we are able to adjust and to rise to the needs of justice

and see that the parties are fairly and properly protected when a deficiency judgment is sought. I suggest that we are. In the case of a judgment of strict foreclosure, a hearing is held, pursuant to § 49-14, to determine the fair market value of the property at the time title is transferred. See *Baybank Connecticut, N.A.* v. *Thumlert,* 222 Conn. 784, 610 A.2d 658 (1992); *Society for Savings* v. *Chestnut Estates, Inc.,* supra. In *Society for Savings* v. *Chestnut Estates, Inc.,* supra, 576, we struck down the prior § 49-14 as unconstitutional because it did not provide adequate due process protection to the debtor in the valuation of the property for the purpose of a deficiency judgment. It is time we acknowledge the infirmities of the approach we have allowed to continue in awarding deficiency judgments following foreclosures by sale and recognize that the price obtained at a foreclosure sale does not necessarily represent the fair market value of the property.

If the sale price obtained in a foreclosure sale constituted the fair market value of the property, the protections offered the mortgagor at the sale and the confirmation hearing would be sufficient to comport with due process. Once we acknowledge that a foreclosure by sale does not automatically produce the fair market value price, however, "the court must have a mechanism for establishing the value of the subject property to determine whether and to what extent a deficiency exists." *Fairfield Plumbing & Heating Supply Corporation* v. *Kosa,* 220 Conn. 643, 647, 600 A.2d 1 (1991). Because foreclosure sales rarely produce the fair market value price,[8] and due process requires that

---

[8] Many other jurisdictions have recognized the need to have fair market value be the basis upon which the deficiency judgment is measured and have so legislated. E.g., Ariz. Rev. Stat. Ann. § 33-814 (A); Cal. Civ. Proc. Code § 580a; Ga. Code Ann. § 44-14-161; Idaho Code §§ 6-108, 45-1512; Mich. Comp. Laws Ann. § 600.3170; Neb. Rev. Stat. § 76-1013; Nev. Rev. Stat. § 40.457; N.J. Stat. Ann. § 2A:50-3; N.Y. Real Prop. Acts. Law § 1371 (McKinney); N.C. Gen. Stat. § 45-21.36; Okla. Stat. tit. 12, § 686; Pa. Stat.

the fair market value price be offset against the outstanding debt, automatically applying the foreclosure sale price to determine the deficiency judgment violates due process. To the extent that § 49-28 does not require the trial court to use the fair market value of the property to determine a deficiency judgment, I would find it unconstitutional.[9]

" ' "If the invalidity of an enactment is evident beyond a reasonable doubt, our duty, delicate as the task may be, is to nullify the statute.". . .' " *Society for Savings* v. *Chestnut Estates, Inc.,* supra, 576. I "fully appreciate the presumption of constitutionality that attaches to a statutory enactment . . . ." Id., 577. Nonetheless, to the extent that the statute allows the court to use something other than the fair market value of the property to determine a deficiency judgment, it deprives a debtor of procedural due process and cannot stand.

Although there is presently no statutory guidance on how to ascertain the fair market value of the property

Ann. tit. 12, § 21-21.1; S.D. Codified Laws § 21-47-16; Utah Code Ann. § 57-1-32; Wash. Rev. Code § 61.12.060; Wis. Stat. Ann. § 846.165. In general, these statutes require that the fair market value of the property be credited against the debt. See generally B. Dunaway, The Law of Distressed Real Estate § 14.04 [3] [a]. By crediting the fair market value of the property against the debt, the "borrower's equity in the property" is provided some protection. It also encourages mortgagees "to bid up the foreclosure sale price to the market value." Id.; *United States* v. *MacKenzie,* 510 F.2d 39, 41 (9th Cir. 1975). Additionally, courts have exercised their equitable powers to credit the fair market value of the property against the debt when the foreclosure sale price is less than fair market value. See, e.g., *Chemical Bank & Trust Co.* v. *Schumann Associates, Inc.,* 150 Misc. 221, 223, 268 N.Y.S. 674 (1934); *Davis Estate, Inc.* v. *Rochelle,* 181 Wash. 81, 84, 42 P.2d 788 (1935); *Suring State Bank* v. *Giese,* 210 Wis. 489, 494, 246 N.W. 556 (1933).

[9] This court recently held in *Baybank Connecticut, N.A.* v. *Thumlert,* 222 Conn. 784, 788, 610 A.2d 658 (1992), that the language of General Statutes § 49-14 is not applicable to foreclosures by sale. To the extent that that case stands for the proposition that the foreclosure sale price automatically constitutes fair market value and, thus, should automatically be used to determine a deficiency judgment, I would overrule it.

following a foreclosure by sale, I would recommend that a deficiency judgment following a foreclosure by sale carry the same opportunities as the hearing held pursuant to § 49-14 when a deficiency judgment is sought following a judgment of strict foreclosure. Having ascertained only fourteen years ago what is required to sustain a deficiency judgment following a judgment of strict foreclosure, we have ample guidance in determining what is required to sustain a deficiency judgment following a judgment of foreclosure by sale. See id., 569–70. A deficiency judgment procedure is the functional equivalent of a suit upon the note which, although procedurally a part of the foreclosure action, serves the separate function of providing for recovery on the balance of the note that was not satisfied by the foreclosure. See *Equitable Life Assurance Society* v. *Slade,* 122 Conn. 451, 455, 190 A. 616 (1937). There is, however, "no hard and fast formula that can be applied to all situations . . . . [T]he hearing required by due process . . . is not fixed in form [which] does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Society for Savings* v. *Chestnut Estates, Inc.,* supra, 572–73.

Recognizing that a foreclosure sale price even once approved does not automatically determine fair market value for purposes of a deficiency, I would conclude that § 49-28 does not adequately provide due process protections in determining a deficiency judgment. Accordingly, I would declare § 49-28 unconstitutional.