[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On or about February 22, 1991, the defendant Haddad executed a promissory note running to the plaintiff bank in the amount of one hundred sixty-seven thousand ($167,000) dollars, which note was secured by a mortgage upon his real estate. Haddad defaulted in the terms of the note and this foreclosure proceeding was instituted on May 9, 1995. The defendant, the United States of America, was a party of this litigation from its inception and its presence mandated the ultimate judgment, which was entered on September 18, 1995, to be a judgment of foreclosure by sale.
In that judgment, the debt was found to be one hundred ninety-three thousand five hundred forty-two dollars and seventy-five cents ($193,542.75); which was the aggregate of the principal indebtedness of one hundred sixty-three thousand five-hundred fifty-three dollars and forty-three cents ($163,553.43), real estate taxes paid by the bank in the amount of twelve thousand four hundred fifty-six dollars and nineteen cents ($12,456.19), and an escrow deficiency for a homeowner's and flood insurance in the amount of one thousand seventy-five dollars and ninety-three cents ($1,075.93). The fair market value of the property was found to be one hundred ninety-five thousand ($195,000) dollars allocated at seventy thousand ($70,000) dollars to the building and one hundred twenty-five thousand ($125,000) dollars to the improvements. An appraiser's fee of four hundred fifty ($450) dollars and an attorney's fee of two thousand fifty-two dollars and fifty cents ($2,052.50), both of which were found to be fair and reasonable were awarded. The date of sale was set at November 11, 1995 at 12:00 p. m. on the premises. On the date of the sale, the committee was present upon CT Page 2022 the premises and duly distributed a "notice to bidders" to five prospective bidders. Two of whom were prepared to bid and duly registered with the committee. An opening bid of one hundred forty thousand ($140,000) dollars was offered by the plaintiff, which indeed was the only bid received by the committee. After an appropriate passage of time, the bidding was declared closed.
The required down payment was received by the committee contemporaneously with the execution of the bond for deed, and the deed was approved, as were the committee report, the committee's fee of thirty-five hundred fifty-five ($3,555) dollars, together with expenses in the amount of sixteen hundred sixteen dollars and forty cents ($1,616.40); an appraisal fee was found by the court and awarded in the amount of three hundred ($300) dollars. On January 2, 1966, the Webster Bank, successor in interests to Shelton Savings Bank, by virtue of a bank merger, moved the court for a supplemental judgment and for a deficiency judgment.[1]
The plaintiff has moved for a deficiency judgment asking the court to find the total debt due to be two hundred two thousand one hundred fifty-two dollars and fifty-two cents ($202,152.52). Those numbers are the aggregate of the debt as of the date of judgment of one hundred ninety-three thousand five hundred forty-two dollars and seventy-five cents ($193,542.75); interest from September 18, 1995 to December 18, 1995 of four thousand eight hundred thirty-eight dollars and forty cents ($4,838.40); attorney's fees in the amount of two thousand fifty-two dollars and fifty cents ($2,052.50); costs in the amount of eleven hundred sixty-eight dollars and eighty-seven cents ($1,168.87); and additional counsel fees in the amount of five hundred fifty ($550) dollars. Those numbers should aggregate the amount of the finding requested of two hundred two thousand one hundred fifty-two dollars and fifty-two cents ($202,152.52).
Our Supreme Court has spoken at length on the question of the determination of the amount of a deficiency judgment and the manner which that amount is calculated. "We find confirmation for this construction of § 49-28 in the parallel provision of the Uniform Commercial Code, which we have recognized as a source of legislative policy for real property transactions. [Citations omitted.] Under General Statutes § 42a-9-504 (2), it is clear that, after a COMMERCIALLY REASONABLE SALE, [emphasis supplied] a secured creditor is entitled to a deficiency judgment measured by the net proceeds of the sale in accordance with § 42a-9-504
CT Page 2023 (1). [Footnote omitted.] General Statutes § 42a-9-507 (2) [footnote omitted] is even more illuminating, because it provides that a disposition of secured collateral is conclusively deemed to have been commercially reasonable if it has been approved in a judicial proceeding." New England Savings Bank v. Lopez,227 Conn. 270, 281-282.
Our court recognizes no basis; however, in state law regarding foreclosures by sale, for the proposition that the debtor is legally entitled to a credit with a fair market value of the property sold. A debtor's legal entitlement is instead to a credit for the amount of the sale proceeds. When a court order is a judgment of foreclosure by sale, the price realized upon the sale of the property fixes the amount for which a deficiency may be entered pursuant to § 49-28 of the General Statutes. NewEngland Savings Bank v. Lopez, supra, 277; Fairfield Plumbing Heating Supply Corporation v. Kosa. 220 Conn. 643, 646 n. 8; see also D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 9.05B, p 161; BayBank Connecticut N.A. v. Thumlert, 222 Conn. 784,788.
This court has no quarrel with any of these precedents and the law on deficiency judgment which they have collectively established. It is, nevertheless, significantly troubled by a once unique but recently more frequent practice indulged in by mortgagee banks. The factual predicate generated by that practice is clearly and rightfully distinguishable from the law in these cases. All too frequently, representatives of those mortgagees attend public sales, submit offers to purchase to the committees which are significantly and substantially less than the amount of the debt owed by the mortgagor. In this factual scenario, the foreclosing mortgagee is the sole bidder at the public sale. The result of this practice is to create an artificial deficiency conceived by and controlled by the foreclosing mortgagee. To apply the law of foreclosures of sale where this occurs, is to countenance and perpetuate this artificial deficiency, is a windfall for the foreclosing mortgagee and an unconscionable example of unjust enrichment. In this situation, the law becomes the sword rather than the shield it was intended to be.
The defendants cite to a coordinate decision in the case ofNew Milford Savings Bank v. Gohsdigian, 9 CSCR 990 (September 26, 1994, Pickett, J.). That court too was troubled by this practice and denied the motion for deficiency judgment. This concept seems to be gaining some support at the trial bench. In January of this CT Page 2024 year, in New England Savings Bank v. Lopez, Superior Court, Judicial District of New London at Norwich Docket No. CV91-98263s (January 17, 1996, Koletsky, J.) noted the foreclosing mortgagee's inequitable action and that the ancient writ of audita querela, is an equitable writ would be available to the defendant in this situation. Denying the defendants relief under those circumstances because they filed a motion to reopen a judgment instead of styling it an independent action of audita querela, would be to elevate form over substance. The instant proceeding is actually different than what the court heard in the plaintiff's motion for a summary judgment.
Foreclosure is an equitable action permitting the trial court to examine all matters to ensure that complete justice may be done. Hartford Federal Savings Loan Assn. v. Lenczyk, 153 Conn. 457,463. The determination of what equity requires in a particular case, and the balancing of the equities is a matter for the discretion of the trial court. Kakalik v. Bernardo,184 Conn. 386, 395. There is no question that a secured creditor is entitled to a deficiency judgment measured by the net proceeds of the sale in accordance with § 42a-9-504 (1) provides after aCOMMERCIALLY REASONABLE SALE. (Emphasis supplied.) New EnglandSavings Bank v. Lopez, supra, 281. Despite an earlier approval of the committee's doings, the bid offered by the plaintiff was fifty-five thousand five hundred forty-two dollars and seventy-five cents ($55,542.75) less than its debt. This court finds that the sale in this instance was hardly a commercially reasonable sale.
In accordance with the foregoing, the plaintiff's motion for a deficiency judgment is denied.
Moraghan, J.